The STATE of Ohio, Appellee,

v.

TAYLOR, Appellant.

[Cite as *State v. Taylor* (1992), 82 Ohio App.3d 434.]

Court of Appeals of Ohio,
Montgomery County.

No. 12860.

Decided Aug. 20, 1992.

*Lorine M. Reid,* Assistant Prosecuting Attorney, for appellee.
*Jeffrey Slyman,* for appellant.

FAIN, Presiding Judge.

Defendant-appellant Kevin Eugene Taylor appeals from his conviction and sentence, following a no-contest plea, on one count of attempted aggravated trafficking in drugs, in violation of R.C. 2923.02 and 2925.03(A)(6). Taylor contends that the trial court should have suppressed the results of the search of his person and his residence because there was no probable cause to issue the search warrant and because there were defects in the affidavit supporting

the warrant. We conclude that any defects in the affidavit were not material, the affidavit was sufficient to establish probable cause to search the house, and the warrantless search of Taylor was reasonable under the circumstances. Accordingly, we conclude that the trial court properly denied the motion to suppress.

Taylor also contends that the trial court should have required the state to disclose the identity of the confidential informant, who was the sole source of information supporting the warrant. We conclude that the identity of the informant would not have aided in establishing the existence of probable cause to issue the warrant, and also that Taylor did not show that the informer would have been beneficial to him in preparing for trial. Therefore, the judgment and sentence of the trial court is affirmed.

I

In July 1990, a confidential informant told Sgt. David Maynes of the Dayton Police Department that he had seen Derrick E. Stark preparing a large amount of cocaine for distribution at a house on St. James Avenue within the prior twenty-four hours. Sgt. Maynes relayed that information to Sgt. Michael J. Wilhelm, and also assured Wilhelm that the informant had provided accurate information in the past that had led to at least four felony arrests.

Sgt. Michael J. Wilhelm submitted an application and affidavit for a search warrant. Sgt. Wilhelm had been with the Dayton Police Department for seven years, and at the time of Taylor's arrest was a Supervisor of the Fifth District Neighborhood Security Detail, a unit organized to deal with street-level drug problems. The application for search warrant specified a search for cocaine, currency, documents showing drug-related activity, drug-related paraphernalia, and documents or objects showing a possessory interest in 4536 St. James. The affidavit in support of the application included the following:

"3. That the said items of property are concealed either: (a) upon the person of *Derrick E. Stark, Black Male, 23 yrs. old, 6-0, 215 lbs.,* or (b) are by said person at the following place(s) *4536 St. James Avenue, Dayton, Ohio, a one story, single family, red brick house, located on the south side of St. James, three houses east of England.* There is no number on the house. The house on the east side of 4536 has 4532 on the door, and the house on the west side has the numbers 4540. The affiant can identify on sight.

"4. That the facts upon which Affiant bases said beliefs are:

"(1) On or about July 16, 1990, Sgt. David Maynes of the Dayton Police Department was contacted by a reliable and confidential informant who advised that he had been at 4536 St. James within the past 24 hours and had

seen a large quantity of cocaine being prepared for distribution. The informant advised that this cocaine belongs to Derrick Stark, who the informant advises is responsible for the distribution [of] large amounts of cocaine in the Dayton community.

"(2) The informant listed above has provided information to Sgt. Maynes in the past which has led to at least two arrests for serious felony offenses. Sgt. Maynes has personal knowledge of at least two other cases where this informant provided information to other Police Detectives which led to felony arrests. Sgt. Maynes has found this informant to be very reliable and has never received false information from him/her." (Emphasis added.)

Judge Duncan of the Dayton Municipal Court issued the warrant, and the police put the house under surveillance briefly before executing the warrant that evening. They observed two gray cars in the driveway of the house. Shortly, both cars left, and both returned within a few minutes. Both cars left again, and one returned a second time to the house. That car left a third time and was observed by another officer at a nearby Stop–N–Go. The driver from the gray car, a black male about six feet, two inches tall and heavy-set, got out, went over to a third car, bent over into the car, then went back to his car and returned to the house.

The officers then executed the search warrant, opening the front door of the house with a battering iron. Taylor came out of a bedroom, wearing gym shorts and a tank top. Taylor, a twenty-nine-year-old Black male, is six feet, two and one-half inches tall and weighs about two hundred thirty pounds. Taylor testified that the officers yelled at him to get his hands up, but he responded too slowly and was hit over the head and thrown against the wall. He was handcuffed and then searched. The officer patted him down and pulled out of his pocket a baggie with crack cocaine in it, whereupon the officer arrested him. A search of his bedroom revealed a shoe box with about thirty baggies containing cocaine, a digital pager, a .32 caliber revolver, and some cash. Documents showed that the correct address for the house was 4538 St. James and the owner was Robert E. Taylor, Jr., Taylor's father.

Taylor was arrested and charged with possession of one pound of cocaine, an amount exceeding three times bulk. Taylor moved to suppress the results of the search, and also moved for disclosure of the name of the informant. At the suppression hearing, Taylor's father testified that he owned the house, that Taylor lived there most of the time, that Derrick Stark was his nephew, and that several people had keys and access to the house.

The trial court denied the motion to suppress, holding that Judge Duncan in issuing the warrant had made "a common sense decision whether, given all the circumstances set forth in the affidavit before him, there was a fair

probability that contraband will be found in the residence." The trial court further found that the pat-down was legitimate, and that during the pat-down the officer had found probable cause to believe that Taylor had contraband on his person; the warrantless reaching into Taylor's pockets was permissible because the exigent circumstances precluded the officer from first·obtaining a warrant.

Subsequently, Taylor renewed his motion to disclose the identity of the informant on the basis that the informant would be useful in preparing his defense that the drugs did not belong to him. That motion was also denied. Taylor then entered a no-contest plea to attempted aggravated trafficking, and was convicted and sentenced to a term of three-to-fifteen years in prison and a fine of $250.

Taylor appeals from the denial of his motions to suppress and to disclose the identity of the informant.

## II

Taylor's first assignment of error is as follows:

"The trial court erred in overruling the appellant's motion to suppress."

Taylor argues that the affidavit in support of the application for the search warrant did not satisfy the probable cause requirements of the Fourth Amendment to the United States Constitution, Section 14, Article I of the Ohio Constitution, R.C. 2933.22, and Crim.R. 41. He bases his argument on the fact that the information provided by Sgt. Wilhelm in the affidavit was primarily double hearsay, relayed to Sgt. Wilhelm by Sgt. Maynes from a confidential informant. Taylor argues that Wilhelm did not independently verify the information or the reliability of the informant, and that the affidavit is the type of "bare-bones" affidavit repudiated in *State v. Rodriguez* (1989), 64 Ohio App.3d 183, 580 N.E.2d 1127.

Although the affidavit is minimal, we do not agree that it requires invalidation under the existing case law interpreting the Fourth Amendment.

The purpose of the affidavit in support of a search warrant is to provide the magistrate with sufficient information to conclude that probable cause exists to believe that contraband or other evidence of a crime will be found in a particular place. Probable cause is proof less than that beyond a reasonable doubt or by a preponderance of the evidence; it is " ' "only the probability, and not a prima facie showing, of criminal activity * * *." ' " (Emphasis deleted.) *State v. George* (1989), 45 Ohio St.3d 325, 329, 544

N.E.2d 640, 644, citing *Illinois v. Gates* (1983), 462 U.S. 213, 235, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527, 546.

◼ In the present case, Sgt. Wilhelm related that the informant had personally seen, within the previous twenty-four hours, large amounts of cocaine being prepared for distribution at the house listed in the warrant. Sgt. Wilhelm relied on Sgt. Maynes's assurance that the informant was reliable and had given accurate information in the past that had led to felony arrests. This affidavit had more substance than the "bare-bones" conclusory affidavit in *Rodriguez, supra,* relied on by Taylor. The *Rodriguez* affidavit merely stated that "the department" received a call from Crimestopper # 513, who said that Rodriguez had half an ounce of cocaine at his residence above Disalle Realty. The affidavit did not relate who received the tip, how the informant knew the information, or the time frame involved; in addition, there was no police corroboration of the information. The Wood County Court of Appeals invalidated the search warrant because probable cause to search was not established. That court further concluded that the *Leon* exception to the exclusionary rule was not applicable because the officers' reliance on the bare-bones affidavit that contained only conclusions, with no facts supporting them, was not reasonable.

The affidavit in the present case differs from that in *Rodriguez* in that it provided the fact that the informant had personally seen the cocaine in the house in the preceding twenty-four hours. The affidavit also vouched for the informant by relating that the informant had provided reliable information in the past that had led to felony arrests.[1] Although sparse, these facts are sufficient to provide the judge with a basis for concluding that probable cause existed to believe that cocaine would be found on the premises.

◼ Reviewing courts, including a trial court conducting a suppression hearing, are required to give great deference to a judge's determination of probable cause, and any marginal cases are to be resolved in favor of upholding the warrant. *State v. George* (1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640, 645 citing *Gates, supra,* 462 U.S. at 237, 103 S.Ct. at 2331, 76 L.Ed.2d at 547, fn. 10. Given the deference to be accorded to the judge issuing the warrant, we do not find that the trial court erred in sustaining the validity of the search warrant in the case before us.

---

1. Taylor urges us to adopt the reasoning of Judge Grady's dissent in *State v. Shinall* (Feb. 1, 1991), Miami App. No. 89–CA–62, unreported, 1991 WL 15982. An important factor distinguishing that case from the present case, however, is that the police did not vouch for the credibility and reliability of the informant who provided information about Shinall.

Taylor's argument that the warrant should be invalidated because of Sgt. Wilhelm's reliance on hearsay information transmitted from Sgt. Maynes is also without merit. " 'Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.' " *State v. Henderson* (1990), 51 Ohio St.3d 54, 57, 554 N.E.2d 104, 107, quoting *United States v. Ventresca* (1965), 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690. Hearsay information may be relied on by the officer in providing an affidavit for a search warrant if in fact the officer reasonably believes the information to be true. *Franks v. Delaware* (1978), 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667–678. While it is desirable to have the affiant provide as much detail as possible from his or her own knowledge, practical considerations will often require that the affiant rely on information provided by other sources. Since the purpose of the affidavit is not to prove guilt, but only to establish probable cause to search, the affiant may rely on hearsay information. *Franks*, 438 U.S. at 167, 98 S.Ct. at 2682, 57 L.Ed.2d at 679. However, the basis of knowledge and the veracity of the person supplying the hearsay information are circumstances that must be considered in determining the value of the information and whether probable cause exists. *George, supra*, 45 Ohio St.3d at 329, 544 N.E.2d at 644, citing *Illinois v. Gates*, 462 U.S. at 238–239, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The question is only whether the total facts presented to the issuing magistrate are sufficient to support a determination that probable cause exists. The fact that the information provided is double hearsay is relevant to its value in determining probable cause, but hearsay testimony will not *per se* invalidate a judge's determination of probable cause.

Taylor further argues that the officer's search of Taylor was improper, because the police were looking for Derrick Stark, the police did not know Taylor, the police had no reason to suspect that Taylor would be on the premises, and the warrant did not list weapons as items included in the search. There was no warrant to search Taylor, and the warrant did not authorize the search of persons found on the premises. Thus, the question is whether the fruits of the warrantless search must be suppressed because there was no probable cause to search Taylor.

Although the facts as stated in the suppression hearing were minimal, we conclude that the trial court was within its discretion in determining that the police officers were acting reasonably when they frisked Taylor and then, as a result, concluded that there was probable cause to believe that crack cocaine was in Taylor's pocket.

The police had a warrant to search the house[2] for cocaine and related items. The fact that someone is present in a house that is the subject of a search warrant is not sufficient justification, standing alone, to search the person; there must be particularized facts providing probable cause to search that person. A hunch is not enough; the officer must be able to point to specific facts from which he made reasonable inferences, in light of his experience. Officer Nankivell testified in response to questions from the prosecutor, as follows:

"A. * * * I saw a black male come out of the back bedroom and start to return back into the bedroom. I along with Sewell ran directly to that subject and placed him against the wall to make sure he didn't have any weapons on him.

"* * *

"Q. Was there anybody else in the house other than the defendant at that time?

"A. No.[3]

"Q. Or that came in later?

"A. No.

"Q. Now, you stated that you placed him up against the wall.

"A. Right.

"Q. And what did you do at that time?

"A. I patted him down for my safety and the other officers there due to the warrant being for narcotics * * *." (Footnote added.)

On cross-examination, Nankivell testified as follows:

"Q. Okay. No one told you that we're looking for some automatics or 45's or 38's or something, Derrick Stark may be armed and dangerous? No one gave you that information?

"A. No.

"Q. It would be fair to say then that the reason why you were looking for weapons was because of what normally happened in the Dayton Police Department, is that correct?

"A. Correct.

---

**2.** Although the number of the house as stated in the affidavit was incorrect, the house was particularly described, including its location. Thus, the error in the numbers was not material.

**3.** A review of the record reveals that there were at least four officers in the house at the time.

"Q. Okay. Would it be fair to say also, Officer, that at the time you saw this individual who you didn't know who it was, that you didn't see any guns?

"A. That I did not see, but that doesn't mean he could have had one on him.

"Q. But you didn't see a gun on him, did you?

"A. No.

"Q. And he didn't threaten you in any manner, did he?

"A. We didn't give him any chance to.

"Q. He was walking away from you?

"A. Starting to go into his room.

"Q. Not only did you not see any guns, you didn't see any weapon on [*sic*] his possession either.

"A. That's what I stated.

"Q. All right. He was not wearing any loose or bulky sweatsuit, was he?

"A. I believe he was wearing long shorts.

"Q. Okay. What about no shirt?

"A. I don't believe he was.

" * * *

"Q. Okay. And I believe you testified at the time you observed that black male for the first time, you didn't have any idea who [he] was.

"A. Other than he fit the basic description of the suspect that we were looking for.

"Q. Being a large black male, is that right?

"A. Right."

 It is common knowledge that, in this day and age and in this area, drugs and weapons are frequently found in close proximity, especially in the city of Dayton; therefore, although the search warrant did not specifically authorize a search for weapons, the trial court could have concluded that it was reasonable for the police, out of concern for their own safety, to perform a *Terry* frisk for weapons upon anyone present in a suspected crack house. In *Michigan v. Summers* (1981), 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340, the Supreme Court upheld the action of police in detaining a resident of a house where a search was proceeding pursuant to a warrant. In assessing the justification for the seizure of the resident without a warrant, the Supreme Court included as "articulable facts" supporting the seizure of the person an interest in minimizing the risk of harm to the officers. "Although

no special danger to the police is suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Summers*, 452 U.S. at 702–703, 101 S.Ct. at 2594, 69 L.Ed.2d at 349–350. Similarly, in the present case, while there was no evidence of any especial danger to the police beyond the fact that they were executing a search warrant in a suspected crack house, we conclude that the fact alone justified a *Terry* search for weapons.

Because of the prevalence of handguns in places where illicit drugs are distributed and sold, it would be requiring police officers to take unreasonable risks to require them to execute search warrants of such places without being able to frisk persons present to check for weapons. We conclude that the police officers acted reasonably in frisking Taylor for weapons.

 The *Terry* frisk led to the discovery of a baggie containing crack cocaine in Taylor's front pocket. Officer Nankivell described the circumstances leading up to this discovery, as follows:

"Q. And upon conducting the pat-down search, what if anything did you feel?

"A. In the right front pocket there was a bulge. I squeezed it. It was bumpy and made a gritty sound. I felt that it was possibly crack so I went into the pocket and there was a baggie containing several pieces of at that time suspected crack cocaine.

"Q. Okay. Based upon your experience, had you seen this type of substance before?

"A. Yes.

"Q. Okay. And recognized it as crack cocaine?

"A. Yes.

"Q. And where exactly was this particular baggie upon the defendant?

"A. In his right front pants pocket."

On cross-examination, Nankivell admitted that the bulge did not feel like a weapon, but that he thought that the bumpy, gritty material was crack cocaine, based both on the circumstances of the search warrant and also upon his prior experience of patting down people and finding that kind of material on them. The material that he pulled out ultimately tested positive for crack cocaine.

There is testimony in the record that, if believed, could persuade the average mind that in the process of a legitimate *Terry* search the officer acquired probable cause, based on his prior experience in handling crack cocaine and the fact that he was executing a search warrant of premises where cocaine was suspected to be, to believe that Taylor was in possession of crack cocaine.

Taylor's first assignment of error is overruled.

### III

Taylor's second assignment of error is as follows:

"The trial court erred in failing to grant the appellant's motion to compel the disclosure of the identity of the appellee's confidential informant."

Taylor argues that the trial court erred in denying the motion to compel the disclosure of the identity of the informant who provided the basis for the determination of probable cause to issue the search warrant. The trial court relied on *State v. Williams* (1983), 4 Ohio St.3d 74, 4 OBR 196, 446 N.E.2d 779, in denying the motion because "the informant's identity would not be vital in establishing an element of the crime charged." The trial court did not specifically address the alternate basis for compelling disclosure of the identity of the informant—that the informant's identity would be helpful to the accused in preparing a defense.

The state's privilege not to disclose the identity of an informant is based upon the benefit that informers provide to society by providing information that aids in solving and preventing crimes. That benefit is weighed against the defendant's constitutional right to compel the testimony of witnesses in his behalf. When the informant may be useful to the accused in preparing his defense, the accused's right takes precedence over the general interests of society.

There are two different points at which a defendant may wish to compel the disclosure of an informant. In a preliminary suppression hearing, where the issue for determination is not guilt or innocence but probable cause to issue a warrant, the desire to test the credibility and reliability of an informer who has been vouched for by the police is not a consideration that warrants disclosure. *McCray v. Illinois* (1967), 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62, 66; *State v. Beck* (1963), 175 Ohio St. 73, 23 O.O.2d 377, 191 N.E.2d 825, reversed on other grounds (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, 31 O.O.2d 80. The issue there is the good faith and belief of the police in reasonably relying on the informer's information, and the identity of the informer or the informer's testimony is not relevant to that

determination. As discussed in Part II above, the trial court did not err in refusing to compel the disclosure of the identity of the informer for purposes of the suppression hearing.

However, at trial, where the issue is the guilt or innocence of the accused, the benefits to society in encouraging citizens to provide information on crimes do not necessarily outweigh the benefit to the accused in preparing a defense. Therefore, if it is necessary or helpful to the defense, the informer's identity must be disclosed. *Beck, supra.* Nevertheless, the informer's identity will be ordered disclosed only upon a showing of particularized need, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other factors. *Roviaro v. United States* (1957), 353 U.S. 53, 62, 77 S.Ct. 623, 628–629, 1 L.Ed.2d 639, 646.

Taylor contends that this is a situation that requires disclosure, similar to that in *State v. Gover* (1989), 61 Ohio App.3d 330, 572 N.E.2d 781. But Gover's defense was mistaken identity and alibi, and Gover was not arrested until five months after the drug buy for which he was charged. The court of appeals concluded that the informant who introduced the officer to the drug seller could be crucial in establishing Gover's defense.

In the present case, Taylor contends that the cocaine found was not his,[4] that he was merely a user, not a dealer. However, he has provided no showing of particularized need, but only states that the informer might show that Taylor did not own the drugs. *Ownership* of the drugs is not one of the elements of the crime with which he was charged, possession of a controlled substance in excess of three times the bulk amount; *possession* is sufficient. R.C. 2925.03(A)(6). Taylor has not alleged that he did not have possession of the cocaine. While Taylor was free to raise personal use as an affirmative defense, he chose not to do so. Taylor has not suggested how the disclosure of the informer's identity would have been helpful to him in preparing his defense.

Taylor's second assignment of error is overruled.

## IV

Both of Taylor's assignments of error having been overruled, the judgment of the trial court is affirmed.

*Judgment affirmed.*

---

**4.** Taylor also denied owning the digital pager and the money that was found in his bedroom.

WILSON, J. concurs.

GRADY, J., concurs separately.

GRADY, Judge, concurring.

I write separately because, while I agree that the warrantless search of defendant Taylor's person was not illegal, I cannot agree with Judge Fain's analysis in support of that conclusion.

The central inquiry required by the Fourth Amendment is the reasonableness under the attendant facts and circumstances of a particular governmental invasion of a citizen's personal security. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 44 O.O.2d 383. Unreasonable searches are *per se* illegal. Warrantless searches are presumptively unreasonable and, therefore, illegal. Absent either a warrant or probable cause combined with exigent circumstances, an officer may search a person only if the officer has a reasonable suspicion that the person is armed and dangerous to the officer or others. A search limited to those purposes may then be made.

Whether or not an officer's suspicion is reasonable is a fact-sensitive inquiry resolved on an objective basis. The state must demonstrate an individualized need from the particular facts and circumstances involved.

I cannot dispute Judge Fain's assertion that it is "common knowledge" that drugs and weapons are often found in close proximity or his conclusion that officers searching a premises for drugs may also take reasonable steps to protect themselves. However, under Fourth Amendment analysis the reasonableness of a weapons frisk to accomplish that goal depends on the particular facts involved, not the generality of common knowledge, however faithfully we may all subscribe to it.

The rationale followed by Judge Fain is inconsistent with Fourth Amendment analysis in two ways. First, it adopts a general hypothesis of fact and dispenses with the requirement that the state show a particularized need beyond it. Second, it permits a search at the absolute discretion of the officer when the general hypothesis is shown. Both results are at odds with the burden placed on the state by the Fourth Amendment to show an individualized suspicion of danger that justified the particular warrantless invasion of a person's personal security. That is not a difficult burden, and this court generally grants great deference to law enforcement officers who must meet it. However, it cannot be waived entirely to accommodate law enforcement without destroying the core principles of the Fourth Amendment.

Officer Nankivell testified that when officers encountered defendant Taylor he was dressed only in baggy shorts, did not appear to be armed, and did not threaten them. He justified his search of Taylor as one conducted "for my

own safety and the other officers due to the warrant for narcotics * * *." On cross-examination, he acknowledged that this is "what normally happened in the Dayton Police Department." These reasons are not founded on the requisite individualized suspicion, but instead on a general rule applicable to a broad category of situations. Standing alone, they do not rebut the presumption of unreasonableness and illegality that attaches to any warrantless search.

We are not limited to the needs articulated by the officer conducting the search in order to determine its legality. If the record demonstrates that on the attendant facts and circumstances the search was reasonable, its fruits should not be suppressed.

In this case, officers were executing a warrant to search a private residence containing several rooms. The officers were unfamiliar with the rooms and their contents and had no knowledge of who, other than the person identified in the warrant, might be found there. Officers chose to enter with a battering ram (no reason for this means is explained in the record), which can readily produce confusion and a violent reaction from persons inside. The officers were then thrust into close quarters with unknown persons in an inherently perilous situation. A reasonably prudent officer in such circumstances would, as these officers did, examine the premises and the persons inside for weapons that might suddenly be turned on the officers. Such an examination would reasonably include a "pat-down" of those persons.

The Fourth Amendment is a protection against arbitrary searches by law enforcement officers. It requires, simply, that under the circumstances the person presents a danger that a prudent officer may reasonably act to avoid. Where officers are executing a warrant issued by a neutral and detached magistrate who has authorized the search, the risk of arbitrary action by officers is greatly ameliorated. These same considerations would not, therefore, necessarily apply to an on-the-street stop and frisk instituted by an officer on his or her own suspicion of crime.

For the foregoing reasons, I find that the search of defendant Taylor's person was reasonable and, therefore, not prohibited by the Fourth Amendment. He is not entitled to suppression.

Finally, I believe that the reliance on *Michigan v. Summers* (1981), 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340, is misplaced. *Summers* was specifically limited to pre-arrest seizures of persons found on premises searched pursuant to a warrant. The Supreme Court permitted a brief detention under those circumstances until the investigation is completed. The opinion specifically distinguished weapons pat-down searches of such persons from the permitted

detention, stating that the two should not be confused. See *Summers,* 452 U.S. at 696, 101 S.Ct. at 2590, 69 L.Ed.2d at 345, fn. 4.