Gregory Eldridge appeals from his conviction and sentence for drug abuse, which was entered on a plea of no contest that Eldridge entered after the trial court overruled his motion to suppress evidence.
On May 27, 1997, a paid confidential informant called Detective Mark Stapleton of the Dayton Police Department. In the past, this informant had provided reliable information to Stapleton and his partner, Detective Harry Tullis, about people who were selling illegal drugs and a house that contained illegal drugs.
The informant stated that he had seen Eldridge at an apartment in Cliburn Manor and that Eldridge was in possession of cocaine. The informant also stated that Eldridge would soon be leaving the apartment in a black General Motors truck. He provided the truck's license plate number and a description of Eldridge as a white, heavyset male. In a subsequent conversation, the informant told Tullis that Eldridge was known to carry a gun and might be armed.
Stapleton relayed this information to Tullis and two other detectives, Randy Miller and Jorge Delrio. Miller and Delrio then went to Cliburn Manor in an unmarked police car to observe the apartment and to follow Eldridge when he left. Stapleton and Tullis were in the area for additional support.
After Miller and Delrio saw the truck described by the informant leave Cliburn Manor, the detectives observed that the operator was driving erratically. Tullis called for police officers in uniform to stop the truck, which was driven by Defendant Eldridge.
An officer in uniform, Rokeiver Johnson, heard the dispatch requesting assistance from a marked police cruiser in stopping Eldridge's truck. The dispatch provided a license number and a description of the truck. The dispatch also said that Eldridge was possibly armed and carrying drugs. Johnson pulled Eldridge over and asked him to raise his hands where he could see them. He then ordered Eldridge to exit the truck.
Johnson performed a pat-down of Eldridge and felt two bulges in Eldridge's front shirt pocket, one which felt like paper and the other like a plastic pill bottle. No gun was discovered on Eldridge or in the truck. The paper turned out to be cash. Johnson removed the plastic pill bottle from Eldridge's pocket and opened it. Johnson testified that in his experience people carry drugs in plastic containers so that the drugs will not be destroyed or lost. The pill bottle contained white powder and pills, which a cobalt reagent test revealed was cocaine. The officers placed Eldridge under arrest.
Eldridge filed a motion to suppress this evidence, arguing that the trial court should suppress all evidence because the officers obtained it in violation of his Fourth Amendment rights. Eldridge also argued that the trial court should suppress all the statements that he made to the officers because the officers obtained the statements in violation of his Fifth and Sixth Amendment rights. The court overruled Eldridge's motion.
Eldridge timely appeals and presents three assignments of error.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN HOLDING THAT THE POLICE HAD REASONABLE SUSPICION TO SEIZE THE DEFENDANT.
A seizure occurs "whenever a police officer accosts an individual and restrains his freedom to walk away. . . ."Terry v. Ohio (1968), 392 U.S. 1, 16. A search is a "careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons." Id.
Eldridge argues only that the trial court erroneously concluded that the police had reasonable suspicion to justify the seizure. Because Eldridge does not argue that the police lacked reasonable suspicion to justify the search, we will not address that issue. Thus the sole issue presented in this assignment of error is whether the police were justified in stopping Eldridge.
In justifying a seizure, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. A police officer does not lack reasonable and articulable suspicion merely because he receives those facts from an informant. See State v. Inabnitt (1991),76 Ohio App.3d 586.
In determining the value of the tip given by the informant, a court must look at the totality of the circumstances.Illinois v. Gates (1983), 462 U.S. 213, 230-31. Here, Stapleton and Tullis had worked with the informant prior to his tip on Eldridge. The detectives testified that the informant's information on these past cases was truthful and reliable. These past dealings could lead the detectives to reasonably conclude that the informant's information about Eldridge was also reliable. "Because an informant is right about some things, he is more probably right about other facts." Id. at 244 (quoting Spinelli v. United States (1969), 393 U.S. 410,427).
The informant provided the detectives with very specific facts regarding the location and description of Eldridge; that he would be leaving Cliburn Manor, the type of truck he was driving and its license plate number. As the detectives verified these facts, the more reasonable became the detectives' inference that Eldridge also possessed cocaine as related by the informant. Confirmation of these specific and articulable facts created a reasonable suspicion that Eldridge possessed cocaine that justified the stop of his truck. Thus, this seizure did not violate Eldridge's constitutional rights.
Eldridge's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING THE DEFENDANT A SEQUESTRATION OF WITNESSES.
Evid.R. 615 requires the court to exclude a potential witness at the request of a party. However, the Rule does not require exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Further, per Evid.R. 104(A), this and other Rules of Evidence do not bind the court in questions involving the admissibility of evidence. Motions to suppress evidence made pursuant to Crim.R. 12(B) (3) concern admissibility of that evidence.
The court granted Eldridge's motion to exclude witnesses. The State designated Det. Tullis as its officer or employee pursuant to Evid.R. 615. Defendant Eldridge requested the court to order Tullis to testify first if he was going to remain. The court refused to do so. Defendant Eldridge argues that this was an abuse of discretion. The abuse of discretion standard means more than an error in law or judgment. The trial court's decision must be unreasonable, arbitrary, or unconscionable in order for a reviewing court to reverse. State v. Adams (1980),62 Ohio St.2d 151, 404 N.E.2d 144.
Eldridge argues that Tullis should have been excluded from the court room so that he could not fill in any missing parts from the other officers' testimony. The trial court had the power to order Detective Tullis excluded from the court room or that he should testify first. It was not required to do so, however.
We cannot say that the trial court abused its discretion in allowing Tullis to remain in the court room or in not ordering him to testify first. Eldridge's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN DENYING THE DEFENDANT THE RIGHT TO CONFRONTATION OF WITNESSES.
A criminal defendant has a right to confront his accusers, which includes the opportunity to cross-examine that accuser.Pointer v. Texas (1965), 380 U.S. 400. However, "where disclosure [of an informant's identity] would not be helpful or beneficial to the accused, the identity of the informant need not be revealed." State v. Williams (1983), 4 Ohio St.3d 74,76.
This court has held:
 "In a preliminary suppression hearing, where the issue for determination is not guilt or innocence but probable cause to issue a warrant, the desire to test the credibility and reliability of an informer who has been vouched for by the police is not a consideration that warrants disclosure. McCray v. Illinois (1967), 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62, 66; State v. Beck
(1963), 175 Ohio St. 73, 23 O.O.2d 377, 191 N.E.2d 825, reversed on other grounds (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, 31 O.O.2d 80. The issue there is the good faith and belief of the police in reasonably relying on the informer's information, and the identity of the informer or the informer's testimony is not relevant to that determination."
State v. Taylor (1992), 82 Ohio App.3d 434, 446-447.
The issue here was not probable cause but whether officers possessed a reasonable and articulable suspicion that Eldridge was engaged in criminal activity. That is a less-demanding standard, but the basic legal issue remains the same; whether officers were required to have a warrant in order to perform a search or seizure. Again, the good faith and belief of the officers, not the correctness of the informer's tip, is the issue to be determined. Granting the Defendant's request to learn the identity of the informant would not cast light on that question, which is more properly resolved by asking the officers' questions relevant and pertinent to their belief that the informant was reliable.
This is not to say that the identity of an informant need never be revealed in a hearing on a motion to suppress. If a defendant-movant makes a showing of particularized need for that information in relation to the relevant exception to the warrant requirement on which the State relies, the court may order the disclosure. However, no such showing was made here.
Eldridge's third assignment of error is overruled.
Having overruled all of Eldridge's assignments of error, we will affirm the judgment of the trial court.
YOUNG, J. and FAIN, J., concur.
Copies mailed to:
Cheryl A. Ross, Esq. Charles L. Grove, Esq. Hon. Barbara Pugliese Gorman