OPINION
{¶ 1} Defendant-appellant Marcus D. McComb appeals from his conviction and sentence, following a no-contest plea, on one count of Possession of Crack Cocaine. McComb contends that the trial court erred when it overruled his motion to suppress *Page 2 
evidence obtained as a result of a weapons pat-down search just prior to his arrest, and a statement he made to police just after he was told that he was under arrest.
 {¶ 2} We conclude that the evidence was obtained as the result of a brief investigatory stop, based upon reasonable, articulable suspicion that a drug transaction was taking place, and as the result of a weapons pat-down, which was reasonable in view of all of the circumstances, including the officer's testimony that he had previously found weapons in the buttocks area of persons patted down. While McComb was in custody, having just been arrested, when he made his statement to the arresting police officer, the statement was not the product of questioning, having been volunteered in response to the advisement that McComb was under arrest.
 {¶ 3} Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 4} Dayton police officer Gregory J. Gaier is a 10 ½ year veteran of the Dayton police force, who has been in the Narcotics Bureau for the past 7 ½ years. He has been involved in drug arrests on a daily basis.
 {¶ 5} At about 8:20 one evening in early August, 2006, while performing his duties, he saw a woman in an automobile talking on a cell telephone in an area commonly used for open-air drug transactions. Gaier decided to keep on eye on the woman. After a short time, she drove into a housing area known as an area where drug transactions commonly occurred. She made a short telephone call, got back in her car, and drove to another area known for drug transactions. Here she parked her car and *Page 3 
used her cell phone for seven to eight minutes.
 {¶ 6} The suspect then drove to yet another area known for drug transactions. This area is one that officer Gaier and his colleagues know as an area in which firearms are fired. The suspect stopped across the street from the All-in-One Market. Seven to eight men were standing in front of this market. Upon the suspect's arrival, two of them walked across the street and went to the driver's side window of the suspect's car. The two men were standing side by side. One of the men was McComb.
 {¶ 7} The other man, not McComb, interacted with the woman driving the car in a way that led Gaier, based upon his experience, to conclude that a drug transaction was taking place. After the transaction appeared to have been completed, Gaier and another officer approached the two men, while other officers followed the vehicle being driven by the woman suspect. Gaier stopped McComb on suspicion of having been involved in a drug transaction. Gaier conducted a weapons pat-down for his safety.
 {¶ 8} The pat-down included a somewhat intrusive pat-down of McComb's buttocks:
 {¶ 9} "A. I pat it down with an open hand, and then when I — throughout the body, the pants legs, the inner pants legs, chest, basically the entire area. I'm conducting a patdown with an open hand to feel for any type of object that could be construed as a weapon. When I get to the buttocks area, I keep my hand in a flat open palm area, go basically in between the cheeks of the buttocks and up and pat down the buttocks area. And I can tell you, through past experience, I have recovered knives hidden in the buttocks area. *Page 4 
 {¶ 10} ". . . .
 {¶ 11} "Q. Now, did you — what did you feel when you ran your hands up the buttocks area?
 {¶ 12} "A. When my hand was between the cheeks, there was an irregular rock-shaped item that felt exactly like a rock. It was inconsistent. It was not circular. It was an item throughout thousands and thousands of drug arrests that I've made, it was immediately apparent by the way it touched my hand that it was crack cocaine.
 {¶ 13} "Q. How far in between the cheeks of his buttocks did you have to put your hand to feel this?
 {¶ 14} "A. Well, unless I could pull the buttocks apart and show you, it was between the area, it was not shoved up into the cavity. It was between the buttocks area, probably a quarter of the way up from the cavity area.
 {¶ 15} "Q. Okay. So, when you're putting your hand up, you're making contact, say the cheeks were apart, you're making contact all the way up; is that correct, with the skin?
 {¶ 16} "A. My hand I placed between the buttocks areas all the way up, and then comes up around, as I stated before, because I know for a fact that I recovered weapons hidden deep into the buttocks area, and I'm going to check for my safety to make sure there is no weapon in that area.
 {¶ 17} "
 {¶ 18} "Q. Okay. How big was this object you felt?
 {¶ 19} "A. It was about a gram of crack, which is about that big (indicating), *Page 5 
something that definitely does not belong in that area; and due to the shape and consistency and size, it was immediately apparent and immediately recognizable to me to be crack cocaine.
 {¶ 20} "Q. So, with your fingers you had it there, was it an eighth of an inch, a quarter of an inch?
 {¶ 21} "A. I'd say about the size of a nickel, but in a rock form, not a small, thin form."
 {¶ 22} Gaier nevertheless asked another officer, Detective House, to conduct another pat-down. House confirmed that there was a piece of crack cocaine in McComb's buttocks, retrieved it, and told McComb that he was under arrest.
 {¶ 23} Joey Myers, another Dayton police officer on the scene, testified that:
 {¶ 24} "A. Once Detective House told him [McComb] that he was under arrest for crack, possession of crack, he stated — he looked over at me and stated, it's just a dime, a dime bag.
 {¶ 25} "Q. Was that in response to any questioning?
 {¶ 26} "A. No. He was just-
 {¶ 27} "Q. You did not ask him any questions?
 {¶ 28} "A. Just spontaneous statement out of nowhere.
 {¶ 29} "Q. Okay. Did you hear anybody else ask any questions of him?
 {¶ 30} "A. No."
 {¶ 31} McComb was indicted on one count of Possession of Crack Cocaine. After his motion to suppress was overruled, McComb pled no contest, a judgment of *Page 6 
conviction was entered, and McComb was sentenced accordingly. McComb appeals from his conviction and sentence.
 II {¶ 32} McComb's sole assignment of error is as follows:
 {¶ 33} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS GAINED AGAINST APPELLANT IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS PURSUANT TO THE FOURTH, FIFTH, SIXTH, ANDFOURTEENTH] AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 34} McComb cites State v. Brown, Mont. App. No. 20336,2004-Ohio-4058, for the proposition that a statement made in response to custodial interrogation must be suppressed if the suspect has not been advised of his rights under Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. McComb contends that this requires the suppression of the incriminating statement he made immediately following his arrest.
 {¶ 35} This contention is easily disposed of. There is unrebutted evidence in the record, in the form of Officer Myers's testimony, from which the trial court could find, as it evidently did, that the incriminating statement made by McComb was not in response to questioning, but was volunteered. The trial court properly declined to suppress this statement.
 {¶ 36} McComb's challenge to the evidence retrieved from his person is threefold. First, he contends that Gaier lacked a reasonable, articulable suspicion for *Page 7 
stopping him. McComb points to the fact that he was merely standing beside the individual whom Gaier suspected of having conducted the drug transaction. Although this fact, by itself, would likely fall short of proof beyond reasonable doubt that McComb was involved in the transaction, we conclude that it provided Gaier with a reasonable, articulable suspicion of McComb's involvement sufficient to justify a brief, investigatory stop. The circumstances leading up to McComb and the other man walking up to the car were suggestive of a drug transaction. Significantly, only McComb, not the other men who had been standing across the street in front of a store, accompanied the man who appeared to be the principal conducting the drug transaction. McComb's standing right next to the principal during the transaction also suggested his involvement.
 {¶ 37} In our view, the evidence in the record justifies a conclusion that Gaier had reasonable and articulable suspicion that McComb was involved in a drug transaction.[1]
 {¶ 38} McComb next challenges the reasonableness of Gaier's decision to pat him down for weapons. His argument in support of this contention appears indistinguishable from his argument that Gaier lacked a reasonable, articulable suspicion that McComb was involved in a drug transaction. We have concluded that Gaier had a reasonable, articulable suspicion that McComb was involved in a drug *Page 8 
transaction that had just taken place.
 {¶ 39} We have held that "drugs and weapons are frequently found in close proximity, especially in the City of Dayton." State v. Taylor
(1992), 82 Ohio App.3d 434, 444, 612 N.E.2d 728. This conclusion is bolstered in this case by Gaier's testimony that weapons have been fired in the location where the stop took place, and by his testimony that he has frequently found weapons in connection with drug investigations.
 {¶ 40} We are satisfied that the record in this case supports the reasonableness of Gaier's decision to pat McComb down for weapons.
 {¶ 41} McComb's final challenge to the search that resulted in the discovery of the crack cocaine is the most troublesome. He contends that the search of the area between his buttocks cheeks was unreasonably intrusive. There is no question that it was an intrusive pat-down, if the search described can even be fairly characterized as a "pat-down."
 {¶ 42} Gaier testified that he had recovered weapons ("knives" at one point in his testimony; "weapons" at another) from the area between the buttocks cheeks. Gaier used the plural nouns in his testimony, but never indicated how many knives or weapons he had recovered. From this testimony, the trial court could find, as it evidently did, that Gaier had a legitimate concern for his safety, and that this concern, rather than a desire to search for drugs, animated his decision to search between McComb's buttocks cheeks.
 {¶ 43} The issue is close, and difficult, involving the balancing of a substantial intrusion into a suspect's personal privacy, a strong concern, against a police officer's *Page 9 
interest in protecting himself and other officers from danger, another strong concern. On another record, in which the specific frequency with which weapons are found in these searches, and the dangerous natures of the weapons, would be established, we might find the proper balancing of these interests to require a different result. On the sparse record in this case, we conclude that the trial court could find, as it did, that Gaier's weapons-search of the area between McComb's buttocks cheeks was reasonable.
 {¶ 44} McComb's sole assignment of error is overruled.
 III {¶ 45} McComb's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and DONOVAN, JJ., concur.
[1] Even if McComb had been merely an innocent bystander while the drug transaction was taking place right in front of him, it would not have been unreasonable to detain him as part of a brief investigation, to elicit from him any information he might provide as a witness. Since this would arguably have provided the police with less justification to have subjected McComb to a protective weapons pat-down, we base our conclusion that Gaier had a reasonable and articulable suspicion justifying a brief, investigatory stop, upon Gaier's suspicion that McComb was more than a mere witness to the proceedings. *Page 1