[Cite as *State v. Radcliff*, 2014-Ohio-3221.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-118 |
| | : | |
| CHRISTOPHER W. RADCLIFF | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas, Case No. 13-CR-00465




JUDGMENT:                    AFFIRMED




DATE OF JUDGMENT ENTRY:      July 18, 2014




APPEARANCES:

For Plaintiff-Appellee:                    For Defendant-Appellant:

KENNETH W. OSWALT            WILLIAM T. CRAMER
LICKING CO. PROSECUTOR      470 Olde Worthington Rd., Suite 200
CHRISTOPHER A. REAMER      Westerville, OH 43082
20 S. Second St., Fourth Floor
Newark, OH 43055

*Delaney, J.*

{¶1}   Appellant Christopher W. Radcliff appeals from the November 26, 2013 Judgment Entry of the Licking County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on July 3, 2013 when Sgt. Carpenter of the Granville Post of the Ohio State Highway Patrol was sitting stationary on Everett Avenue in the city of Newark, facing westbound.  Carpenter observed a Firebird speed past him at 38 miles per hour in a 25-mile-per-hour zone.

*Traffic Stop*

{¶3}   Carpenter activated his lights as the Firebird passed but heard it accelerate.  The car made several turns before Carpenter eventually caught up to it, stopping in a parking lot.

{¶4}   Carpenter advised the driver, identified as Brandon Kreager, to turn off the car and give him the keys.  One additional passenger was in the front seat and another passenger was in the back seat, on the passenger side.  Carpenter asked for I.D. from all of the occupants and brought Kreager back to his cruiser to check the information. He discovered the front-seat passenger had given him a false social security number. Carpenter returned to the Firebird, obtained new information from the front passenger, and took it back to his cruiser to check it out.  At that point the front-seat passenger exited the car and took off running, "right out of his flip-flops."

{¶5}   Carpenter didn't pursue the fleeing passenger because he was dealing with Kreager and the back seat passenger.  He noticed Kreager was wearing a court-

issued ankle bracelet and learned his operator's license was suspended. Carpenter radioed to request Trooper Wilson to come to the scene.

{¶6} Carpenter turned his attention to the backseat passenger, identified as appellant. The car door had been left open and appellant was leaning toward it. Carpenter told him not to go anywhere. Appellant and Kreager said they didn't know the name of the front-seat passenger and claimed they picked him up outside Dollar General. Kreager referred to the man as "Low" and eventually he was determined to be Lowell Hicks.

{¶7} Wilson arrived on the scene of the stop after circling the block several times to look for Hicks. Carpenter told him the driver initially tried to elude him and one passenger lied about his identity before fleeing. Appellant was still seated in the car. Wilson spoke to appellant through the open T-top and observed marijuana debris on the console. He told appellant to get out of the car, intending to pat him down because of the presence of marijuana.

*Patdown of Appellant*

{¶8} Upon exiting, appellant "assumed the position," according to Wilson, meaning he turned around and placed his hands in the air. Wilson quickly patted him down, and as he felt the inside of appellant's right leg, he discovered a large knot which he could tell by feel was a plastic bag with sharp edges. Wilson suspected the substance to be "crystal meth" as soon as he felt it. He asked appellant to remove the substance and appellant shook his shorts and the item fell out onto the ground.

{¶9}   Wilson Mirandized appellant and placed him in handcuffs.  Appellant said the substance was "crystal" which Hicks threw to him before he fled.  Appellant hid it in his shorts because it was "free dope."

*Troopers' Relevant Experience and Application to Stop*

{¶10} Carpenter testified he has 11 years of experience with the Ohio State Highway Patrol.  He has had 50 to 100 contacts with narcotics and is familiar with the appearance of marijuana and methamphetamine.  He stated drugs usually go hand-in-hand with weapons, so he believed a legitimate concern for officer safety existed on this stop.  He cited factors underlying his concern for officer safety, including the initial attempts to elude him in the car, the driver's ankle bracelet, and Hicks providing false information and then fleeing.

{¶11} Carpenter was not aware of the marijuana debris until Wilson saw it.  Wilson has 10 years' experience in the Ohio State Highway Patrol as a road trooper and K-9 handler.  He has specialized training in recognition and interdiction of narcotics and has personally had hundreds of contacts with narcotics.  He has felt contraband during patdowns approximately 200 times and is familiar with both marijuana and methamphetamine.  His concern for officer safety was premised upon the marijuana in the car and his conversation with Carpenter, who told him the driver first eluded him and one passenger fled.  Wilson's concern for officer safety extended to all occupants of the car and therefore he patted appellant down.  Wilson testified appellant consented to the patdown by "assuming the position," meaning he turned around and put his hands up to be searched.

*Indictment, Suppression Hearing, and Plea of No Contest*

{¶12} Appellant was charged by indictment with one count of aggravated possession of drugs (methamphetamine), a felony of the third degree pursuant to R.C. 2925.11(A)(C)(1)(b).   Appellant entered a plea of not guilty and filed a motion to suppress evidence resulting from the patdown.  A suppression hearing was held before the trial court on October 30, 2013, and the trial court overruled the motion to suppress by Judgment Entry dated November 12, 2013.

{¶13} Appellant then changed his plea to one of no contest and was found guilty.  The trial court sentenced him to a prison term of two years in addition to a two-year suspension of his operator's license.

{¶14} Appellant now appeals from the trial court's decision overruling the motion to suppress and the judgment entry of conviction and sentence.

{¶15} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶16} "THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO BE FREE OF UNREASONABLE SEARCHES IN VIOLATION OF THE STATE AND FEDERAL CONSTITUTIONS."

**ANALYSIS**

{¶17} In his sole assignment of error, appellant argues the trial court should have granted his motion to suppress.  We disagree.

{¶18} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998).  During a suppression hearing, the trial court assumes the

role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶19} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra.

{¶20} Finally, as here, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶21} Appellant argues the trial court erred in finding Wilson had reasonable suspicion to pat appellant down and that appellant consented to the patdown. We disagree and find the trial court properly overruled the motion to suppress.

{¶22} Appellant does not contest the stop of the car, but authority to conduct a patdown search does not flow automatically from a lawful stop and a separate inquiry is required. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Fourth Amendment requires an officer to have a "reasonable fear for his own or others' safety" before frisking. Id. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), citing *Terry*, supra, 392 U.S. at 27. Whether that standard is met must be determined from the standpoint of an objectively reasonable police officer, without reference to the actual motivations of the individual officers involved. *United States v. Hill*, 131 F.3d 1056, 1059 (D.C.Cir.1997), citing *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

{¶23} Wilson testified the patdown in this case was for weapons. The frisk, or protective search, approved in *Terry* is limited in scope to a patdown search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. *Terry*, supra, 392 U.S. at 27.

{¶24} The patdown arose from a traffic stop with a driver who was initially evasive, a passenger who gave false information then fled, and marijuana observable inside the car. The United States Supreme Court has recognized traffic stops involve

inherent danger and law enforcement officers may exercise authority over a driver and passengers to maintain a sense of safety. See *Arizona v. Johnson*, 555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009) (noting "'[t]he risk of harm to both the police and the occupants [of a stopped car] is minimized * * * if the officers routinely exercise unquestioned command of the situation.'") (internal citations omitted).

{¶25} Wilson's patdown of appellant is supported by his reasonable belief appellant might have been armed and dangerous. *Terry*, supra, 392 U.S. at 28. Ohio courts have long recognized that persons engaged in illegal drug activity are often armed with a weapon. *State v. Evans*, 67 Ohio St.3d 405, 413, 618 N.E.2d 162 (1993); *State v. Taylor*, 82 Ohio App.3d 434, 612 N.E.2d 728 (1992). "[T]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed." *State v. Warren*, 129 Ohio App.3d 598, 602, 718 N.E.2d 936 (1998).

{¶26} In this case, Wilson articulated his observation of marijuana debris in the car, combined with circumstances that objectively would lead a reasonable officer to conclude appellant might be armed and dangerous. He knew from Carpenter the driver of the car had attempted to elude him and another passenger had fled the scene after lying about his identity. These factors constitute the basis of a legitimate concern for officers' and others' safety.

{¶27} The question whether appellant consented to the patdown is superfluous in light of our finding reasonable suspicion existed. Generally an appellate court would reach the question of the voluntariness of consent only after determining appellant was unlawfully detained. *State v. Hawkins*, 2nd Dist. Montgomery No. 25712, 2013-Ohio-

5458, at ¶ 13.   Because that is not the case here, we decline to issue an advisory opinion as to whether appellant's raising of his hands, without more, constitutes consent.  *Billeter v. State*, 5th Dist. Stark No. 2013CA0083, 2013-Ohio-3698, at ¶ 31.

{¶28} We find the trooper had reasonable suspicion to pat down appellant, thereby locating the contraband.  The trial court did not err in overruling the motion to suppress and appellant's sole assignment of error is overruled.

**CONCLUSION**

{¶29} Appellant's sole assignment of error is overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Gwin, P.J.

Farmer, J., concur.