OPINION
{¶ 1} Appellant, David A. Lawson, appeals from a jury verdict out of the Lake County Court of Common Pleas, which found him guilty of two counts of receiving stolen property. For the following reasons, we affirm.
{¶ 2} By way of background, based on the information received from two confidential informants, Detective Chet McNabb ("Detective McNabb") of the Geauga County Sheriff's Department obtained a search warrant on March 17, 2000, for the premises located at 1270 N. Ridge Road, Bay 400 E/6, Gibbs Industrial Parkway, ("the Gibbs complex") in Painesville, Ohio.
{¶ 3} With the assistance of Detective Anthony Iliano ("Detective Iliano") from the Lake County Sheriff's Department, Detective McNabb and other law enforcement officials executed the search warrant. In relevant part to this appeal, several automobile parts were recovered from the storage unit at the Gibbs complex. These included a steering column with an air bag assembly that had an identifying number.
{¶ 4} A few days later, on March 20, 2000, Detectives McNabb and Iliano proceeded to an apartment complex parking lot and discovered a stolen 1996 Ford F-250 four-wheel drive pickup truck. It had a front end assembly from a 1987 Ford F-150 pickup truck.
{¶ 5} As a result of these events, on August 25, 2000, appellant was secretly indicted by the Lake County Grand Jury on two counts of receiving stolen property, to wit: a Ford F-250 pickup truck; a steering column and an air bag assembly, felonies of the fourth and fifth degree, in violation of R.C. 2913.51(A); and three counts of tampering with vehicle identification numbers, felonies of the fifth degree, in violation of R.C. 4549.62(B) and (C). Subsequent to his arrest, appellant entered a plea of not guilty to all the charges.
{¶ 6} Thereafter, appellant filed a motion to compel disclosure of the identity, address, and prior felony records of the confidential informants, and a motion to unseal the search warrant.
{¶ 7} Appellee countered by filing a certification to the trial court pursuant to Crim.R. 16(B)(1)(e). Therein, the state claimed that to disclose the identities of the confidential informants would not only subject them to possible harm or coercion in this case, but also in several other cases to which they were potential witnesses.
{¶ 8} The trial court held a hearing on appellant's motions to compel disclosure of the confidential informants and unseal the search warrant on November 6, 2000. Upon consideration, the trial court denied both motions, which is reflected in a judgment entry dated November 20, 2000. No transcript of this hearing was filed on appeal.
{¶ 9} Then, on November 7, 2000, appellant filed a motion to suppress all the evidence obtained as a result of his arrest and any evidence resulting from the search of the storage unit at the Gibbs complex. According to appellant, his arrest was illegal as law enforcement officials lacked probable cause and did not possess reliable information to link appellant to any criminal activity. As to the sufficiency of the affidavit in support of the search warrant, appellant challenged the reliability of the confidential informants. Specifically, appellant claimed that the search warrant affidavit failed to provide sufficient information to adduce that the confidential informant was reliable, and the affidavit did not set forth facts that constituted probable cause.
{¶ 10} On November 20, 2000, the trial court held a hearing, and in a judgment entry issued January 9, 2001, denied the motion to suppress. The matter proceeded to trial by a jury.
{¶ 11} After a two day trial, on February 14, 2001, the jury returned a verdict of guilty on the two counts of receiving stolen property, to wit: a 1996 Ford F-250 pickup truck; a steering column and an air bag assembly originating from a 1997 Dodge Ram truck. As to the remaining charges of three counts of tampering with vehicle identification numbers, appellant was found not guilty. The trial court subsequently sentenced appellant to three years of community control with certain conditions and sixty days in the Lake County Jail with no work release privileges.
{¶ 12} Appellant now appeals his convictions, advancing four assignments of error for our consideration:
 {¶ 13} "[1.] The Trial Court erred to the prejudice of the Appellant when it denied Appellant's Motion to Suppress.
 {¶ 14} "[2.] The Trial Court erred by allowing the State to amend the indictment during trial.
 {¶ 15} "[3.] The Trial Court erred to the prejudice of the Appellant by not allowing the Appellant to confront the State's witnesses whom the Appellant believed provided the information which was the basis for the search warrant[.]
 {¶ 16} "[4.] The verdict finding Appellant guilty of Counts one and two, Receiving Stolen Property is against the manifest weight of the evidence[.]"[1]
{¶ 17} In the first assignment of error, appellant presents two separate issues, and we will address each one in tun.
{¶ 18} First, appellant submits that the trial court erred in denying his motion to suppress. According to appellant, his arrest was illegal because the law enforcement officials lacked probable cause and did not possess reliable information to link appellant to any criminal activity.
{¶ 19} "The Fourth Amendment requires that arrest warrants be based `upon probable cause supported by Oath or affirmation' a requirement that may be satisfied by an indictment returned by a grand jury * * *." Kalina v. Fletcher (1997), 522 U.S. 118, 129. "[A]n indictment, `fair upon its face,' and returned by a `properly constituted grand jury,' conclusively determines the existence of probable cause andrequires the issuance of an arrest warrant without further inquiry." (Emphasis added and citations omitted.) Gerstein v. Puhg (1974),420 U.S. 103, 119, fn. 19. See, also, Price v. Felishe (C.A.6, 2000), 2000 U.S. App. LEXIS 1945, at 4; Madyun v. Memphis (C.A.6, 2000), 2000 U.S. App. LEXIS 33379, at 4; State ex rel. Askew v. Goldhart (1996),75 Ohio St.3d 608, 609 (holding that "[w]hile an indictment is a mere accusation, it indicates that the grand jury found probable cause" that the defendant committed the offenses); State v. Nixon (Apr. 25, 2001), 9th Dist. Nos. 00CA007638 and 00CA007624, 2001 WL 422885, at 10; Cawleyv. Lake Cty. Sheriff (Apr. 7, 1995), 11th Dist. No. 94-L-080, 1995 WL 238608, at 4, (holding that the return of an indictment by a grand jury is evidence of probable cause).
{¶ 20} In the instant matter, the Lake County Grand Jury secretly indicted appellant on August 25, 2000.[2] Based on the foregoing case law, the return of this indictment by the grand jury constitutes probable cause and "requires [the] issuance of an arrest warrant without further inquiry." Gerstein at 119, fn. 19. As such, a warrant for appellant's arrest was issued, and he was subsequently arrested. Given that the warrant issued to arrest appellant was based on the secret indictment, the law enforcement officials possessed probable cause and reliable information to connect appellant to certain criminal activity.
{¶ 21} Second, appellant challenges the trial court's denial of his motion to unseal the search warrant on the basis that it prevented him from examining the affidavit in support thereof. According to appellant, "the information contained therein would be helpful in preparing his defense and to challenge the sufficiency of the affidavit." Appellant also suggests that he has a due process right to review the affidavit as he is faced with the loss of liberty and seizure of property.
{¶ 22} "Generally, a person whose property has been seized pursuant to a search warrant has a right under the Warrant Clause of the Fourth Amendment to inspect and copy the affidavit upon which the warrant was issued." In re Search Warrant for 2934 Anderson Morris Road Niles,Ohio 44406, (N.D.Ohio. 1999), 48 F. Supp.2d 1082, 1083. See, also, In reSearch Warrants Issued August 29, 1995 (S.D.Ohio 1995), 889 F. Supp. 296,301, on reconsideration. This right, however, is not absolute. Id.
{¶ 23} The right to examine an affidavit in support of a search warrant may be denied when the government demonstrates: "`(1) that a compelling governmental interest requires that the materials be kept under seal and (2) there is no less restrictive means, such as redaction, available.'" (Citation omitted.) In re Search Warrants IssuedAugust 29, 1995 at 301-302. "If the government can demonstrate a compelling need to keep the contents of the affidavit secret for some reasonable period of time, then the person's right to examine the affidavit must yield." In re Search Warrant for 2934 Anderson MorrisRoad at 1083.
{¶ 24} The federal court for the Southern District of Ohio, Eastern Division, set forth examples of compelling governmental interest:
 {¶ 25} "Clearly, the fact that there is an on-going criminal investigation could provide a compelling governmental interest. * * * Other examples of compelling governmental interest which might, in an appropriate case, justify the extraordinary act of sealing warrant materials after the underlying search has been conducted include the presence of information in a supporting affidavit gleaning from a court ordered wire-tap that has yet to be terminated, or information that could reveal the identity of confidential informants whose lives would be endangered. Sealing may be appropriate under such circumstances if redaction is not feasible." (Citation omitted.) In re Search Warrants Issued August 29, 1994 (S.D.Ohio 1995), 889 F. Supp. 296, 299. But, see, In re Search Warrant #5077/91 (1994), 96 Ohio App.3d 737, 741 (holding that the trial court did not abuse its discretion by unsealing the affidavit for a search warrant even though it would lead to the disclosure of a confidential informant's identity because the state's interest in the matter ended when the investigation ended).
{¶ 26} As to this point, appellant urges that the state lacked a compelling governmental interest in keeping the search warrant affidavit under seal. According to appellant, disclosure would not have been detrimental to the ongoing criminal investigation because the investigation had come to an end with his arrest.
{¶ 27} Our review of this particular issue, however, is hampered because appellant has failed to provide this court with a transcript of the hearing on the motion to unseal the search warrant. Although we have a transcript of the suppression hearing and the jury trial, there is no transcript of the motion to unseal the search warrant proceeding.[3]
{¶ 28} It is axiomatic that appellant, as the party challenging the trial court's decision, must provide a reviewing court with a transcript of the proceedings in the trial court in order to demonstrate its claimed error. App.R. 9. Without a transcript, this court is unable to determine if a compelling governmental interest existed sufficient to keep the contents of the search warrant secret. As such, we are precluded from a merit review of the denial of appellant's motion to unseal the search warrant. Instead, we must presume that evidence was presented at the hearing which justified the decision of the trial court. Knapp v.Edwards Laboratories (1980), 61 Ohio St.2d 197, 199 (holding that the failure to provide a transcript necessitates a presumption that the judgment and proceedings in the trial court were valid).
{¶ 29} Appellant also claims that he has a right of access to the search warrant affidavit because it is a public record.
{¶ 30} R.C. 149.43 governs the availability of public records by establishing a statutory right of access to public records and the procedure for exercising that right. Pursuant to R.C. 149.43(A)(1)(h), public record does not include "confidential law enforcement investigatory records[.]" R.C. 149.43(A)(2) defines confidential law enforcement investigatory records as:
 {¶ 31} "[A]ny record that pertains to a law enforcement matter of a criminal * * * nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
{¶ 32} "* * *
 {¶ 33} "(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source."[4]
{¶ 34} The state's principal objection to appellant's motion to unseal the search warrant was that to disclose the identities of the confidential informants would not only subject them to possible harm or coercion in this case, but also in several other cases to which they were potential witnesses. As a result, the state filed a certification to the trial court pursuant to Crim.R. 16(B)(1)(e) containing such assertions.
{¶ 35} Again, appellate review of this issue is hindered because no transcript of the hearing on the motion to unseal the search warrant appears in the record. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." Knapp at 199. Hence, in the absence of a transcript, an appellate court must presume regularity in the trial court's proceedings and accept its judgment. Knapp at 199.
{¶ 36} In the instant matter, we are unable to determine without a transcript whether the search warrant affidavit was a public record or a confidential law enforcement investigatory record. By refusing to unseal the search warrant affidavit, the trial court apparently determined that such was not a public record. Absent a transcript, this court must presume that evidence was presented at the hearing to justify the trial court's refusal to unseal the search warrant.
{¶ 37} As a final note on this issue, the state proposes that in light of the following exchange at the suppression hearing, appellant knew of the information contained in the affidavit:
 {¶ 38} "Ms. Kowell: * * * Your Honor, again, for the record, a copy of the search warrant and inventory was admitted by the Court at the last hearing. Mr. Morrison [appellant's counsel] has a copy of that portion of the search warrant and he's had an opportunity to review."
{¶ 39} From this, the State concludes that other than the identities of the confidential informants, appellant was well aware of the information contained in the search warrant affidavit. We disagree.
{¶ 40} At most, the above quoted exchange indicates that appellant had a copy of the search warrant. There is no indication that appellant had access to the search warrant affidavit. As such, the state's contention that appellant already knew of the information contained in the search warrant affidavit is not sufficiently supported by the record.
{¶ 41} In summation, the law enforcement officials who arrested appellant based on a secret indictment had probable cause to do so. Furthermore, in the absence of a transcript, we presume that evidence was presented at the hearing to support the trial court's decision to deny appellant's motion to unseal the search warrant. For these reasons, appellant's first assignment of error is without merit.
{¶ 42} In the second assignment of error, appellant maintains that the trial court erred when it permitted the state to amend count one of the indictment on the morning of trial. By altering the name of the owner of the vehicle, appellant suggests that the identity of the crime changed, in violation of Crim.R. 7(D). From this, appellant concludes that there is a grave risk that he was convicted of a felony on evidence that was not presented to the grand jury.
{¶ 43} In accordance with Crim.R. 7(D), the trial court has the discretion to amend the indictment at any time before, during, or after a trial "provided no change is made in the name or identity of the crime charged." See, also, State v. Owens (1975), 51 Ohio App.2d 132, 149;State v. Smith (May 2, 2002), 8th Dist. No. 79527, 2002-Ohio-2145, at ¶ 60.
{¶ 44} In the case sub judice, count one of the indictment charged appellant with receiving stolen property and originally named Louis J. Soltesz ("Mr. Soltesz") as the owner of a 1996 Ford F-250 pickup truck. The state, however, was permitted to amend this portion of the indictment by deleting the victim's name, while the phrase "property of another" remained.
{¶ 45} "An amendment to an indictment which changes the name of the victim changes neither the name nor the identity of the crime charged." Owens at 149. See, also Smith at ¶ 62; State v. Henize
(Nov. 1, 1999), 12th Dist. No. CA99-04-008, 1999 WL 988792, at 6; Statev. Harris (Mar. 4, 1999), 8th Dist. No. 73921, 1999 WL 126945, at 4. "The precise name of the victim herein was not an essential factual element for demonstrating the offense of receiving stolen property[.]" (Emphasis added.) Smith at ¶ 62.
{¶ 46} Here, the amendment to count one merely altered the name of the victim, not the name or identity of the crime charged. Nothing in the record indicates that the discrepancy over the victim's name altered any element the state was required to prove in this particular case. In proving the identity of the alleged stolen truck, it was sufficient that the state prove that this 1996 Ford F-250 was stolen prior to coming into the possession of appellant.
{¶ 47} Accordingly, the trial court did not abuse its discretion in amending the indictment to alter the name of the victim because this did not change the name or identity of the crime charged. Thus, appellant's second assignment of error is meritless.
{¶ 48} In assignment of error three, appellant claims that the trial court erred in denying him the right to confront Ivanna Schultz ("Ms. Schultz"), an alleged confidential informant, at the suppression hearing.
{¶ 49} The right of confrontation includes the right to physically face and cross-examine witnesses. State v. Williams (1983),4 Ohio St.3d 74, 75. The Supreme Court of Ohio has held that "[t]he identity of an informant must be revealed to a criminal defendant when the testimony of the informant is vital to establishing an element of the crime or would be helpful or beneficial to the accused in preparing or making a defense to criminal charges." Id. at syllabus.
{¶ 50} "There are two different points at which a defendant may wish to compel the disclosure of an informant. In a preliminary suppression hearing, where the issue for determination is not guilt or innocence but probable cause to issue a warrant, the desire to test thecredibility and reliability of an informer who has been vouched for bythe police is not a consideration that warrants disclosure. McCray v.Illinois (1967), 386 U.S. 300, 304, 87 S.Ct. 1056, 1059, 18 L.Ed.2d 62,66; State v. Beck (1963), 175 Ohio St. 73, 23 O.O.2d 377, 191 N.E.2d 285, reversed on other grounds (1964), 379 U.S. 89, 85 S.Ct. 223,13 L.Ed.2d 142, 31 O.O.2d 80. The issue there is the good faith and belief of thepolice in reasonably relying on the informer's information, and theidentity of the informer or the informer's testimony is not relevant tothat determination." (Emphasis added.) State v. Taylor (1992),82 Ohio App.3d 434, 446-447. See, also, State v. Williams (1994),97 Ohio App.3d 289, 291-292; State v. Eldridge (Feb. 5, 1999), 2d Dist. No. 16934, 1999 Ohio App. LEXIS 583, at 7-8.
{¶ 51} By way of background, during the suppression hearing, Detective McNabb testified that based on information received from two confidential informants, he obtained a search warrant for a storage unit located in the Gibbs complex. As the affiant on the search warrant, Detective McNabb believed that the confidential informants were reliable, trustworthy, and credible:
 {¶ 52} "Q. [by prosecuting attorney] Detective, after you interviewed the CI [confidential informant] in this particular case, did you go through any independent analysis before you obtained a search warrant, to determine whether or not you believed that information to be reliable, trustworthy and credible?
{¶ 53} "A. Yes.
{¶ 54} "Q. And what was the process that was done?
 {¶ 55} "A. We determined that by the amount of information that was given to us, as related to the investigations on both of the crimes, and the fact that none of that information could have been obtained, without being part of our internal investigation in our Department, and none of it was for public release; also, that these people had approached us, without us seeking them; and there was no deals made with us, or [sic] there was no benefit for them to come forward, other than to give us the information.
 {¶ 56} "Q. And in addition, through your own separate investigation, did that corroborate some of the details you learned from the CIs?
 {¶ 57} "A. It was extremely close as to what had happened in the actual investigation that we had had up to that date."
{¶ 58} During the suppression hearing, appellant attempted to call Ms. Schultz, an alleged confidential informant, as a witness. In support of this tactic, appellant urges that he has made a preliminarily showing to establish the necessity for disclosing the confidential informant's identity for the following reasons: (1) Detective McNabb provided no information in his testimony that the alleged informant had any personal knowledge that the evidence sought would be located at the Gibbs complex; (2) Detective McNabb's testimony did not aver that the alleged informant had personally seen any contraband at the suspect's premises; (3) the testimony did not establish that the alleged suspect personally told the informant that the alleged stolen items would be located therein; and (4) there was no testimony by Detective McNabb that the alleged suspects had confided in the informant that he had received, retained, or disposed of any stolen items.
{¶ 59} The issue at the suppression hearing was whether law enforcement officials had probable cause to conduct a search at the Gibbs complex pursuant to a search warrant based on the information received from two confidential informants. Thus, the good faith and belief of Detective McNabb in relying on the confidential informants' tips became the central issue. As such, the specific identity of the confidential informants or the confidential informants' testimony after the fact was not relevant to this determination. Taylor, supra. Rather, it was Detective McNabb's state of belief at the time the warrant was obtained which was at issue.
{¶ 60} In summation, we hold that the trial court's decision denying appellant's request to call Ms. Schultz, one of the informants, as a witness for purposes of a pretrial suppression hearing did not violate appellant's Sixth Amendment right to confrontation.[5] As a result, the third assignment of error is not well-taken.
{¶ 61} In the fourth and final assignment of error, appellant maintains that his convictions are against the manifest weight of the evidence. Essentially, appellant attacks the believability of the evidence presented.
{¶ 62} When reviewing a claim that the judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 16.
{¶ 63} Unlike a sufficiency of the evidence challenge, a manifest weight of the evidence claim contests the believability of the evidence presented. Schlee at 13. Thus, "[t]he issue when reviewing a manifest weight of the evidence challenge is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Wright (Mar. 29, 2002), 11th Dist. No. 2000-P-0128, 2002 WL 480328, at 4, 2002-Ohio-1432. See, also, State v. Nields (2001), 93 Ohio St.3d 6, 25, 2001-Ohio-1291.
{¶ 64} In order for an appellate court to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Thompkins at 387.
{¶ 65} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins at 390 (Cook, J. concurring).
{¶ 66} For ease of discussion, we will first consider the evidence presented at trial to establish count one of the indictment, receiving stolen property, to wit: a 1996 Ford F-250 truck, followed by the evidence presented to substantiate count two of the indictment, receiving stolen property, to wit: a steering column and an air bag assembly, which originated from the 1997 Dodge Ram truck.
{¶ 67} As to count one of the indictment, appellant submits that the state did not produce evidence that he was in possession of the 1996 Ford F-250 truck between March 17 and March 20, 2000, for the following reasons: (1) both Detectives McNabb and Iliano testified that on March 17, 2000, the date the search warrant was executed at the Gibbs complex, appellant was not present; (2) on March 20, 2000, the police officers testified that appellant was not in the F-250 truck at the time it was seized; (3) Detective Iliano testified that he did not see appellant actually operate the F-250 truck between March 17 and March 20, 2000; (4) Detective McNabb stated that when he saw the F-250 truck on March 20, 2000, it was unconcealed and located in a parking lot; (5) appellant's fingerprints did not appear on the F-250 truck; (6) Zachary Gibbs' testimony was less than credible; (7) appellant testified that he purchased the F-250 truck with a wrecked front end from A-1 Recycling in November 1999 for $1,500; (8) appellant inquired of the seller where the VIN tag of the F-250 truck was located; and (9) Zachary Gibbs changed the front end of the F-250 truck with a 1987 Ford F-150 truck.
{¶ 68} R.C. 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The plain language of this section indicates that the state need establish only two elements in order to obtain a conviction for receiving stolen property: (1) that defendant received, retained or disposed of property which was not his own; and (2) that the defendant knew or had reasonable cause to believe that the property was stolen.
{¶ 69} Furthermore, R.C. 2901.22(B) defines "knowingly" as follows:
 {¶ 70} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
{¶ 71} In order to receive or retain property in the sense required by R.C. 2913.51(A), one must have either actual or constructive possession of the stolen property. State v. Hankerson (1982),70 Ohio St.2d 87, 91; In re Lame (Sept. 25, 1998), 11th Dist. Nos. 96-P-0265, 96-P-0266, and 96-P-0267, 1998 WL 683940, at 4. Constructive possession exists when an individual has dominion or control over the property that is not in his actual possession. Hankerson at 91; State v.Wolery (1976), 46 Ohio St.2d 316, 329.
{¶ 72} At trial, the following evidence was presented as to count one, receiving stolen property, to wit: a 1996 Ford F-250 pickup truck.
{¶ 73} Roxy Nonamaker ("Ms. Nonamaker"), a claim representative for the Westfield Insurance Company, testified that in March 1999, a claim was submitted for a stolen vehicle, to wit: a white 1996 Ford F-250, pickup truck with the VIN number at issue.
{¶ 74} Nearly a year later, on March 20, 2000, Detectives McNabb and Iliano located a white F-250 four-wheel drive pickup truck unconcealed in the parking lot of an apartment complex located in Mentor-on-the-Lake, Ohio. According to the license plate exhibited on the F-250 truck, the Bureau of Motor Vehicles listed appellant's wife, Bonnie Lawson, as the owner of a 1987 Ford F-150 two-wheel drive pickup truck. Thus, the vehicle recovered from the parking lot did not match the registration.
{¶ 75} In addition, Detective McNabb was unable to observe the most visible vehicle identification number ("VIN") tag, which is normally located on the left front area of the vehicle, because the dashboard of the F-250 truck was covered with papers. Upon entering the vehicle, Detective McNabb confirmed that this particular VIN tag was, indeed, missing from the dashboard.
{¶ 76} Subsequently, a VIN tag was discovered on another part of this vehicle. According to Detective Iliano, the VIN tag on this vehicle matched that of the reported stolen vehicle, an F-250 truck. Appellant's fingerprints were not found on the F-250 truck because according to Detective Iliano, the truck was not tested for fingerprints.
{¶ 77} Curiously, there was testimony that while the F-250 truck was being placed on the flatbed truck for towing purposes, appellant and his wife appeared in a vehicle in the vicinity where the law enforcement officials were conducting their investigation. When Detectives McNabb and Iliano looked at appellant and his wife, they backed up, turned around and left the area.
{¶ 78} At trial, Zachary Gibbs ("Zachary"), a friend of the Lawson family since 1999, testified. He provided detailed information concerning appellant's criminal activity. Zachary's mother, Ms. Schultz, had dated appellant's son Davey Lawson. As a result of his relationship with the Lawson family, Zachary became familiar with the activity at the storage facility located in the Gibbs complex.[6]
{¶ 79} According to Zachary, the Lawson family owned a white 1987 Ford F-150, two-wheel drive pick up truck. Apparently, this was the vehicle registered to appellant's wife. However, the transmission on the F-150 truck failed, thus rendering the vehicle inoperable. As a result, the front clip of the F-150 truck, which was composed of the fender, the hood, the grill and the headlights, was removed. According to Zachary, appellant told him that the front clip of the F-150 was removed and that appellant placed it on a 1996 Ford F-250 truck. At trial, appellant admitted working on this project:
 {¶ 80} "Q. So, then you worked on the front end of the truck, how long did you take to put the front clip on it?
 {¶ 81} "A. I'd say three weeks working, maybe, two days a week."
{¶ 82} As to this point, William Lang ("Mr. Lang"), a special agent with the National Insurance Crime Bureau who assisted law enforcement officials in vehicle identification, provided additional testimony. According to Mr. Lang, when he examined the F-250 truck that was recovered from the parking lot, he confirmed that the front end assembly on this vehicle came from another vehicle, thereby corroborating Zachary's testimony to this extent.
{¶ 83} While appellant urges that Zachary's testimony was less than credible, we are mindful of the fact that questions of credibility of witnesses are matters left to the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
{¶ 84} At the close of the state's case, appellant took the stand and provided an explanation for possessing the F-250 truck. In essence, appellant's defense was that he did not know the F-250 was stolen. According to appellant, he purchased a white 1996 F-250 pickup truck with a wrecked front end in November 1999 from Scott Bevington ("Mr. Bevington") for $1,500. Appellant, however, did not receive the keys to this vehicle until three days after the purchase. Thereafter, appellant observed that there were no serial numbers visible on the dashboard or door. Although appellant claimed that he asked Mr. Bevington about the missing serial numbers, appellant never received a certificate of title for the vehicle. Appellant denied removing the VIN tags from the F-250 truck and accused Zachary of replacing the front end of this vehicle.
{¶ 85} On this charge, the state presented substantial evidence upon which the jury could reasonably conclude that all the elements of receiving stolen property were met. Although there was no testimony indicating that appellant actually operated the F-250 truck between March 17 and March 20, 2000, at trial, appellant essentially admitted to buying and possessing this stolen vehicle. Furthermore, the jury could find that appellant knew that the F-250 truck was stolen in light of the fact that Zachary testified that appellant told him that appellant mounted the F-150 front clip onto the F-250 truck; that appellant purchased the F-250 truck with no visible VIN number on the dashboard or door; the VIN tag on this vehicle matched that of the reported stolen vehicle, an F-250 truck; and that appellant never obtained a certificate of title for this vehicle. This evidence is sufficient to constitute evidence beyond a reasonable doubt as to count one of the indictment.
{¶ 86} Next, we consider the evidence presented regarding count two, receiving stolen property, to wit: a steering column and an air bag assembly, which originated from a stolen 1997 Dodge Ram truck. For clarity, we note that appellant was not charged with stealing the 1997 Dodge Ram truck.
{¶ 87} As to count two of the indictment, appellant claims that the testimony at trial did not establish beyond a reasonable doubt that he had received, retained, or disposed of a steering column and an air bag assembly knowing or having reasonable cause to believe that the property had been obtained through a theft offense because: (1) when the steering column and air bag assembly from the 1997 Dodge Ram truck were recovered on March 17, 2000, from the storage unit at the Gibbs complex, both detectives testified that appellant was not present; (2) David Downing ("Mr. Downing"), the alleged owner of the property, testified that when he went to the sheriff's department on March 20, 2000, he was unable to identify the property in the photographs as his 1997 Dodge Ram truck; (3) appellant's fingerprints were not found on the Dodge Ram truck items; (4) Zachary's testimony is suspect; and (5) appellant testified that he purchased the 1997 Dodge Ram truck parts at the Canfield Swap Meet in July 1999 and produced a handwritten receipt.
{¶ 88} In count two, appellant was charged with receiving stolen property, that is, miscellaneous automobile parts, being $500 or more, but less than $5,000. Pursuant to R.C. 2913.51(B), receiving stolen property, a misdemeanor of the first degree, is elevated to a fifth degree felony "[i]f the value of the property involved is five hundred dollars or more and is less than five thousand dollars * * *."
{¶ 89} At trial, a Mr. Downing testified that on January 24, 1999, while in the city of Willoughby, his green and gray/tan colored 1997 Dodge Ram four-wheel drive pickup truck was stolen from a parking lot. A few months later, on March 20, 2000, law enforcement officials informed Mr. Downing that they had recovered the steering column and air bag assembly of the truck. However, when Mr. Downing was shown photographs of a Dodge Ram truck at trial, he was not "100 percent sure" that this was his truck.
{¶ 90} As to this point, Mr. Lang, the state's expert, clarified that upon examining the steering column and an air bag assembly, he determined that these parts originated from Downing's Dodge Ram truck that was stolen in Willoughby:
 {¶ 91} "[T]here was a steering column, I took the steering column, removed the air bag, obtained the number from that, this came out of a Dodge Ram Truck, this air bag could be referenced to a vehicle identification number that had been stolen in Willoughby."
{¶ 92} Detective Iliano also confirmed that the steering column and the air bag assembly recovered from the Gibbs complex matched the Dodge Ram truck owned by Mr. Downing:
 {¶ 93} "Q. And with regard to a Dodge Ram truck owned by David Downing, were you aware of the vin identification number identifying the steering column and air bag assembly of that vehicle?
{¶ 94} "A. Yes.
 {¶ 95} "Q. How did that vin number compare to the registration of the vehicle owned by David Downing?
{¶ 96} "A. They were identical."
{¶ 97} As to the value of these automobile parts, Mr. Lang testified that "[r]eplacing of the air bag would be approximately $800 to $1,000," while the entire steering column was worth approximately $2,000.
{¶ 98} Again, appellant's fingerprints did not appear on the steering column and the air bag assembly because, according to Detective Iliano, these automobile parts were not tested for fingerprints.
{¶ 99} Zachary also testified in regard to this second count. During the course of their relationship, Zachary learned that the Lawson family was in possession of a green and silver 1997 Dodge Ram four-wheel drive truck, which was eventually transformed into a "super truck", that is, a race car with a truck body. According to Zachary, appellant told him that the Dodge truck was stolen from North Carolina. Zachary also confirmed that the steering column and air bag assembly recovered from the Gibbs complex were "there the whole time[,]" and originated from a 1997 Dodge Ram truck.
{¶ 100} In rebuttal, appellant produced a handwritten receipt claiming that he had purchased a steering column and an air bag assembly from James Hill at the Canfield Swap Meet in July 1999 for $1,000. We note that this particular receipt did not appear on a receipt form; rather, it was written on a piece of notebook paper. As for the Dodge Ram truck, appellant did not have a certificate of title for this vehicle. Although the storage unit at the Gibbs complex was registered to Frankie Edwards, a Lawson family member, he lived in North Carolina. Appellant further indicated that he had a key to the storage unit where the automobile parts were found.
{¶ 101} The foregoing discussion summarizes that the state presented substantial evidence upon which the jury could reasonably conclude that all the elements of receiving stolen property, that is, a steering column and an air bag assembly, have been proven beyond a reasonable doubt. Nields at 25. During his testimony, appellant essentially admitted to possessing the steering column and the air bag assembly. Both Detective Iliano and Mr. Lang testified that the identification numbers on the steering column and air bag assembly matched the 1997 Dodge Ram truck owned by Mr. Downing. Furthermore, pursuant to Zachary's testimony, a jury could find that appellant knew the steering column and air bag assembly were stolen in light of the fact that appellant admitted to Zachary that the 1997 Dodge Ram truck was stolen. Again, the credibility of Zachary, as well as appellant, were matters for the jury. DeHass at paragraph two of the syllabus. As such, it was within the province of the jury to disbelieve appellant's contention, and instead, accept Zachary's testimony.
{¶ 102} In summation, upon review of the entire record, we cannot say that the trier of fact lost its way and created a manifest miscarriage of justice when it found appellant guilty of two counts of receiving stolen property. As a result, appellant's fourth assignment of error is meritless.
{¶ 103} Based on the foregoing analysis, appellant's four assignments of error are not well-taken, and the judgment of the trial court is affirmed.
WILLIAM M. O'NEILL, P.J., ROBERT A. NADER, J., concur.
[1] As an aside, we note that appellant inadvertently misnumbered his assignments of error as he progressed from the first assignment of error to the third assignment of error.
[2] On appeal, appellant does not specifically attack the validity of the indictment returned by the grand jury. For instance, appellant does not suggest that the indictment was founded on illegal or unreliable evidence, or that there was a significant irregularity in the grand jury proceedings.
[3] While appellant suggests in his appellate brief that the hearing on his motion to unseal the search warrant was held on November 20, 2000, he is mistaken. According to the November 20, 2000 judgment entries denying appellant's motion to unseal the search warrant and disclosure of the confidential informants, the trial court conducted a hearing on these matter on November 6, 2000. In fact, in his November 7, 2000 motion to suppress and November 16, 2000 supplement, appellant concedes to the fact that on November 6, 2000, a hearing was held on his motions to unseal the search warrant and reveal the identity of the confidential informants.
[4] As an aside, we note that the record fails to indicate that appellant made a request under R.C. 149.43 to view the search warrant affidavit. Instead, appellant filed a motion seeking to have the search warrant in question unsealed.
[5] As an aside, we note that the state did not present Ms. Schultz as a witness at trial.
[6] Zachary's grandfather was the owner of the complex.