## NOVAK ET AL. *v.* NOWAK

[No. 27,305. Filed March 25, 1940.]

*Conroy & Glendening,* of Hammond, for appellants.

*Louis C. Holland,* of Gary, and *John M. Stinson,* of Hammond, for appellee.

FANSLER, J.—The appellee brought this action to have a conveyance of real estate declared fraudulent and void and to procure a reconveyance of the property. There was a judgment for the plaintiff. The appellants assign error upon the overruling of a motion for a new trial and a motion to modify the judgment. The questions presented involve only the sufficiency of the evidence.

There is no substantial conflict in the evidence. The appellee was born in Poland. He is a naturalized citizen, past seventy years of age. He can read and write in Polish, but does not read or write English, and has difficulty in English conversation. He is unfamiliar with business transactions and with courts and the law. By his labors, since coming to this country, he acquired a home, which is the subject of this controversy, and approximately $2,000 in postal savings. He has ten adult children. The appellants Vincent S. Novak and Anton C. Novak are his sons. Vincent was his favorite son, whom he had always trusted. In 1936 Vincent and his wife lost their home and had no place to live. The appellee took them into his home, where he was living alone, and permitted them to live with him without charge. In July, 1936, an action was brought against the appellee upon an administrator's bond, which he had signed as surety. The sheriff left a summons with Vincent, who told his father that he would have to go to court. The father expressed fear that he would lose his property, and Vincent said: "I will help you out, you sign the property to me and I will hold it for you until the trouble is over." The appellee agreed. Vincent arranged for an appointment with a lawyer, and informed his father that it would be necessary to go to the lawyer's office and sign a deed. The appellee had no knowledge of the engagement with the attorney until after it was made, and had no acquaintance with the attorney. When the appellee arrived at the office with his son the deed was already prepared and was handed to him for signature. Vincent had made an appointment for the same day with an attorney in Hammond concerning the liability involved in the action on the bond. It was ascertained on that day that the appellee's liability on the bond was $85, and

he then arranged to pay, and shortly thereafter did pay, out of his cash savings, $235 to cover the liability, costs, and his attorney fees. At the time the conveyance of the real estate was made the appellee understood that it was to be conveyed back to him when the trouble was over. The suggestion that the property be deeded to the son and his wife came from the son, and not from the father. After some months the appellee requested that his son convey the property back to him, and the son refused. The appellee went to visit a daughter, and his son, Vincent, locked him out of his house. Afterward Vincent and his wife conveyed the property to Anton C. Novak, who had full knowledge of all of the facts at the time the conveyance was made to him.

The appellants contend that, from the evidence most favorable to the appellee, it is disclosed that the conveyance from the appellee to his son Vincent and wife was made for the purpose of defrauding his creditors; that the deed was therefore fraudulent; and, since the parties are *in pari delicto*, the law and equity will leave them where it finds them, and that the deed is valid between them.

The appellee contends that, under the evidence, it may reasonably be concluded that there was no intention to defraud his creditors. But, for the purposes of the case, it may be assumed, as contended by the appellants, that the purpose of the deed was to defraud the appellee's creditors.

In *Gilchrist et al.* v. *Hatch* (1915), 183 Ind. 371, 378, 106 N. E. 694, 696, 697, it is said: "The weight and trend of modern authority seems to be that, although the parties to a transaction have concurred in an illegal act, whatever it may be, they are regarded as not equally guilty where one party has

been induced into the contract through fraud, oppression or imposition on the part of the other, and under such circumstances equity will intervene whenever the public good requires it." It is said in the text in 12 American Jurisprudence, page 737: "The existence or nonexistence of confidential relations between the parties in fault is an important element in determining whether they are *in pari delicto*." There are numerous cases in which conveyances were set aside, notwithstanding the illegality of the original transaction, where it was deemed that, because of fraud, duress, oppression, imposition, or undue influence, one party was more guilty than the other in inducing the act. When a relation of trust or confidence exists, as between parent and child, and the party in whom trust is reposed has obtained a benefit, the burden will be upon him to show that the transaction was fair and proper; and relief will not be denied the one least at fault if he has been led into the illegal transaction because of ignorance and reliance upon and trust in the other. See *Hobbs* v. *Boatright et al.* (1906), 195 Mo. 693, 93 S. W. 934, 113 Am. St. Rep. 709, and note p. 729; *Rogers et al.* v. *Samples* (1925), 207 Ky. 150, 268 S. W. 799; Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 2, § 942, p. 2000; Story's Equity Jurisprudence, 14th Ed., Vol. 1, § 312, p. 307.

Under the facts in this case, it might reasonably be concluded that the father's fear of losing his property was seized upon by the son as furnishing an opportunity to get the father to deed his property away. It is clear that the father relied upon the son for advice and guidance. It is noted that the son promptly arranged for the deed to be prepared and executed, and postponed inquiry as to the nature of the father's liability until after he had procured the deed.

If inquiry had first been made as to the amount of the liability, the father's fears of losing the property would have vanished at once. It seems to have been discovered upon the same day the deed was signed, and within a very short time thereafter, that the liability of the father was small, and an arrangement seems to have been then made to take care of it. If the appellee in fact intended to defeat his creditors, it was upon a scheme devised, suggested, and directed by the son, who may have been prompted more by a desire to defraud his father out of his home than to protect him from his creditors. The unlettered and trusting father was an easy victim. It would seem to require little argument to convince that a court of equity should not permit the son to have an unconscionable profit by such a transaction, but if precedent is needed it is amply supplied by the authorities cited.

Judgment affirmed.

NOTE.—Reported in 25 N. E. (2d) 993.