**[Cite as *State v. Revere*, 2022-Ohio-551.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28857 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3504 |
| | : | |
| GILBERT TODD REVERE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of February, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CARLO C. MGGINNIS, Atty. Reg. No. 0019540, 55 Park Avenue, Dayton, Ohio 45419
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Gilbert Todd Revere appeals from his conviction on two counts of tampering with evidence, one count of gross abuse of a corpse, and one count of failure to report a death. He claims that the trial court erred when it overruled a suppression motion and then failed to merge for sentencing purposes the charges of gross abuse of a corpse and tampering with evidence. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.    Facts and Procedural History

{¶ 2} On September 6, 2018, Middletown Police Detective Kristi Hughes, who was investigating the disappearance of Michelle Burgan and other women missing from the area, contacted the Moraine Police Department to ask if they could do a welfare check at 5531 Hemple Road, as Burgan was last seen with Revere, the resident of that address. That same day, at 11:41 a.m., Moraine officers were dispatched to Revere's home.

{¶ 3} Officer John Howard was first on the scene and, as he approached the property, he observed a woman standing at the entry door of a detached garage. Officer Howard reported that as soon as she saw the cruiser, the woman quickly retreated inside the garage and closed the door. Officer Howard then parked his cruiser and approached the garage with Officer Craig Seitz and Sergeant Michael Keegan, who had also just arrived on scene.

{¶ 4} The officers repeatedly knocked on the detached garage door and announced their presence.   After a few minutes of getting no response, a male emerged from the house and approached the trio of officers; the man identified himself as Gilbert Revere.   Officer Howard explained that they were looking for a missing person named

Michelle Burgan. Revere confirmed that he knew her and that they had dated, but he claimed that he had not seen her in about a year and a half. He also identified the woman Officer Howard had previously seen as his girlfriend, Regina Griffis.

{¶ 5} Officer Howard collected Revere's contact information and ran it through dispatch; Revere had an outstanding warrant. He was then taken into custody and placed in the back of Officer Howard's cruiser. Griffis (who initially gave officers the name of her deceased sister) was also arrested after officers discovered she had an outstanding warrant. While in custody at the scene, Griffis requested that Sergeant Keegan retrieve some personal items for her. In addition to those requested items, Sergeant Keegan located several handbags and other containers with women's clothing not belonging to Griffis.

{¶ 6} After Griffis was *Mirandized*, she agreed to speak with detectives at the scene. She explained that Revere frequently picked up prostitutes, that he was into "S & M" and other non-traditional sexual practices, and that he would make regular early morning trips to the woods around the property. She then told Detective Hughes that she had seen a citation in the name of Michelle Burgan at the house and multiple pieces of clothing that she believed belonged to the missing woman. Both Revere and Griffis were transported to Middletown police headquarters for further questioning.

{¶ 7} Revere and Griffis were simultaneously interviewed by Detectives Hughes and Spencer at the Middletown police station. Revere's interview lasted approximately seven and a half hours, during which he again admitted knowing Burgan and revealed information about the general location of her body. Similarly, Griffis disclosed where evidence might be in the house.

{¶ 8}   As Revere and Griffis were being interviewed by detectives in Middletown, Moraine detective Nathan Burns presented affidavits to a Montgomery County Common Pleas judge to secure search warrants for 5531 Hemple Road and several surrounding properties all owned by Revere's mother. Four search warrants were signed by the judge between 5:43 p.m. and 5:47 p.m. on September 6, 2018, and the search of the property began at 6:07 p.m. with the help of several cadaver dogs. About an hour and a half later, human remains were discovered under a tarp just beyond the woods line, in the back of the 5531 Hemple Road property.

{¶ 9} Additional search warrants for the same properties were obtained the following day based upon the original information and Revere's admissions during his interview and subsequent polygraph, as well as the discovery of Burgan's remains and other belongings found at Revere's property.

{¶ 10} On September 12, 2018, Revere was indicted on two counts of tampering with evidence, third-degree felonies; a single count of gross abuse of a corpse, a fifth-degree felony; and a single count of failure to report a death, a fourth-degree misdemeanor. He then filed two motions to suppress. The first motion asserted that he was induced into making admissions after Detective Hughes purportedly assured him of misdemeanor charges. The trial court agreed and held that, because of the promise of lenient charges, "Revere's capacity for self-determination and decision-making was overcome. * * * [P]romising him that he would receive [a] misdemeanor charge was coercive and deceptive." July 10, 2019, Decision, Order and Entry at 21. Accordingly, Revere's confession to detectives and statements made after the promise of leniency were excluded.

{¶ 11} His second motion to suppress challenged the probable cause for the September 6, 2018, search warrants. This time, the trial court found that there was probable cause to issue the warrants and denied Revere's motion to suppress.

{¶ 12} On June 2, 2020, Revere pled no contest to the indicted offenses and was sentenced to community control sanctions for a period not to exceed five years. He then filed a timely appeal, raising two assignments of error. However, Revere passed away while this appeal was pending, and we sustained the State's motion to substitute Revere's counsel as the party representative in this case.

## II.    Probable Cause

{¶ 13} In his first assignment of error, Revere avers that the trial court erred in denying his motion to suppress multiple search warrants because they were based on insufficient probable cause. It should be noted that while Revere, in his brief, challenges the probable cause of all four search warrants issued on September 6, 2018, his main issue seems to be with the warrant for 5531 Hemple Road, the property on which Burgan's remains and personal items were found. The record does not indicate that any evidence was found at the other three locations, and the affidavits were basically the same. Accordingly, our focus, too, will be on the warrant for 5531 Hemple Road.

{¶ 14} Pursuant to Crim.R. 41, a request for a search warrant must be made with an affidavit. "The purpose of the affidavit in support of a search warrant is to provide the magistrate with sufficient information to conclude that probable cause exists to believe that contraband or other evidence of a crime will be found in a particular place." *State v. Taylor*, 82 Ohio App.3d 434, 440, 612 N.E.2d 728 (2d Dist.1992). Probable cause is a lesser standard of proof than beyond a reasonable doubt or a preponderance of the

evidence. *Id.* "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

{¶ 15} Our standard of review of a probable cause finding is deferential. An appellate court should not substitute its judgment for that of the magistrate. Instead, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. George,* 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph two of the syllabus. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, * * * appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶ 16} In this case, Detective Burns asked the judge for a warrant to search for evidence of the crime of tampering with evidence. "[A] conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. Likelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St. 3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, ¶ 19.

{¶ 17} The affidavit presented to the issuing judge related the following facts. On September 6, 2018, the Middletown Police Department sent a teletype to Moraine police requesting a patrolman to check the residence at 5531 Hemple Road for a missing adult female named Michelle Burgan. The teletype stated that Revere, who lived at that

address, was the last person to see Burgan before she went missing. Burgan was one of several missing women for whom Middletown detectives were looking.

{¶ 18} Just before noon on September 6, Officer Howard observed a white female standing in the pedestrian door of the detached garage of the Hemple Road property. When the woman saw Officer Howard drive by she ducked inside the garage and closed the door. Officer Howard and two other Moraine officers attempted to make contact with the female subject, but she would not answer the door. After a few minutes, a male later identified as Revere exited the main residence and asked what was going on. Revere advised that the woman was his girlfriend, Griffis. Officer Howard explained that they were there to check on Burgan because she had not been seen in over a year, and asked Revere if he knew her. He affirmed that he used to date her, but that he had not seen her in a year and a half. He was then arrested on a Moraine Mayor's Court warrant and transported to Middletown Police headquarters to be interviewed.

{¶ 19} When officers contacted Griffis at the scene, she initially told them her name was Selma Bimingham, which was later found to be the name of her deceased sister. Inside her purse, Griffis had marijuana and the debit card of her late sister. She was then placed in custody on a warrant out of Butler County. After being arrested, Griffis requested that officers look for her clothing. While looking for Griffis's belongings, Sergeant Keegan located several handbags and other bins that contained women's clothing not associated with Griffis. Griffis then told Sergeant Keegan that Revere liked to pick up prostitutes to "save them" and that he brought prostitutes home all the time.

{¶ 20} Detective Hughes arrived on the scene and conducted an interview with Griffis. During the interview, Detective Hughes observed a citation in the name of Burgan

and multiple pieces of clothing believed to belong to the missing woman. Griffis informed Detective Hughes (as she did Sergeant Keegan) that Revere frequently picked up prostitutes and that he made daily, 4 a.m. trips to the woods around the property.

{¶ 21} Based on the information in the affidavit, the issuing judge found probable cause to issue the search warrants for the crime of tampering with evidence, and we cannot say the decision was an abuse of discretion. Conclusively, "it is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.' " *Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527. The information in the affidavit – especially the fact that Revere knew officers were looking for Burgan and did not disclose that he was in possession of her property – demonstrated a probability that Revere was secreting evidence of Burgan's disappearance.

{¶ 22} Nevertheless, Revere argues that the information in the affidavit that he was the last person to have seen Burgan was hearsay and thus was unreliable and should have been excluded. This argument, though, is unavailing.

{¶ 23} "While it is desirable to have the affiant provide as much detail as possible from his or her own knowledge, practical considerations will often require that the affiant rely on information provided by other sources. Since the purpose of the affidavit is not to prove guilt, but only to establish probable cause to search, the affiant may rely on hearsay information." *Franks v. Delaware,* 438 U.S. 154, 167, 98 S.Ct. 2674, 57 L.Ed.2d 677 (1978); *State v. Taylor*, 82 Ohio App.3d 434, 442, 612 N.E.2d 728 (2d Dist.1992) (hearsay testimony will not per se invalidate a probable cause determination). In fact, according to Crim.R. 41(C)(2), a finding of probable cause may be based on hearsay – in whole or in part – if there is a substantial basis for believing the source of the hearsay is credible and

for believing that there is a factual basis for the information.

{¶ 24} In this case, the source of the purported hearsay was the Middletown Police Department; it is well settled that officers may rely on information received from other members of the law enforcement community if the reliance is reasonable. *See Doran v. Eckold*, 409 F.3d. 958, 965 (8th Cir.2005). Indeed, the United States Supreme Court has held: "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). *See also United States v. Horne*, 4 F.3d 579, 585 (8th Cir.1993) ("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on scene[.]").

{¶ 25} Revere also alleges that because some of the information in the affidavit came from statements made by Griffis (who he argues could not be trusted because she initially lied to police), the trial court erred by finding the affidavit credible. We disagree. While it is true that Griffis originally gave officers the name of her late sister when asked to identify herself, that and other negative information was included in the affidavit. The issuing judge then had the ability to weigh, one way or the other, the veracity of her statements. While we do not know exactly how the issuing judge determined Griffis's credibility, he did ultimately issue the warrant. What we do know, however, is that the trial court, in its suppression decision, found "the affidavit's use of Ms. Griffis's information was proper[,] and that information was entitled to be given weight in the probable cause determination." January 10, 2020, Decision, Order and Entry at 3.

{¶ 26} The trial court did not err in finding that the information used in the affidavit gained from the Middletown Police Department was reliable.

{¶ 27} We find that the trial court did not err in overruling Revere's motion to suppress as there was ample evidence in the affidavit for the issuing judge to find probable cause. But even if, for the sake of debate, we found that the warrants lacked probable cause, the evidence would still have been admitted through the good faith exception to the warrant requirement.

{¶ 28} The good faith exception is implicated when a law enforcement officer reasonably and objectively relies on a search warrant that is ultimately determined to have been issued on less than probable cause. *State v. Cole*, 2d Dist. Montgomery No. 23058, 2009-Ohio-6131, ¶ 30. "If the good faith exception is triggered, the evidence discovered as a result of the authorized search will not be suppressed." *Id.*, citing *U.S. v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exception's rationale is that the exclusionary rule was designed to deter unlawful police behavior, and "the deterrence goal is not advanced when the police objectively and in good faith rely upon a judge's probable cause determination." *Id*.

{¶ 29} To determine whether the good faith exception applies, reviewing courts consider whether a reasonably well-trained officer would have known that the search was illegal despite the issuance of the warrant; the officer's subjective belief is not considered. *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, ¶ 27 (2d Dist.).

{¶ 30} The Ohio Supreme Court has held that "the existence of a warrant normally signifies that a law-enforcement officer has acted in good faith." *State v. Hoffman*, 141 Ohio St.3d 438, 2014-Ohio-4795, 25 N.E.2d 993, ¶ 32. The good faith exception does not

apply, however, when officers deceive the issuing judge by making misleading statements in the affidavit, if the affidavit lacks any indicia of probable cause, or where the issuing judge "wholly abandons his judicial role." *Id.*

{¶ 31} There does not appear to be any evidence in the record that would have led the trial court to believe that Detective Burns made any misleading statements in his affidavit or that he omitted relevant facts. Similarly, there is no evidence that the issuing judge abandoned his judicial role. Based on the record in front of us, we conclude, as the trial court did, that law enforcement reasonably and objectively relied on the search warrant, and even if there was a lack of probable cause (and there was not), evidence would be properly admitted under the good faith exception.

{¶ 32} The first assignment of error is overruled.

### III. Merger

{¶ 33} In Revere's second and final assignment of error, he argues that the trial court erred by not merging the charges of tampering with evidence and gross abuse of a corpse at sentencing.

{¶ 34} When a defendant's behavior supports multiple offenses, courts conduct an allied offenses analysis to determine if the charges merge or if the defendant may be convicted of separate crimes. This process is governed by statute, R.C. 2941.25, and Ohio Supreme Court jurisprudence from *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. R.C. 2941.25 provides:

> (A) Where the same conduct by [a] defendant can be construed to constitute
>
> two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

The statute implements the protections of the Double Jeopardy Clauses of the United States and Ohio Constitutions, which prohibit a second punishment for the same crime. *State v. Frazier*, 2d Dist. Clark No. 2021-CA-46, 2021-Ohio-4155, ¶ 18.

{¶ 35} "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered." *Ruff* at ¶ 31; *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12 (quoting *Ruff*); *State v. Davison*, 2d Dist. Montgomery No. 28579, 2021-Ohio-728, ¶ 29. Offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23.

{¶ 36} A defendant bears the burden of establishing that offenses should be merged as allied offenses, and we review the trial court's merger ruling de novo. *Frazier*

at ¶ 20.

{¶ 37} To determine whether merger is proper in this case, we first must examine the underlying crimes. A conviction for tampering with evidence requires proof that the defendant intended to impair the value or availability of evidence related to an existing or likely official investigation or proceeding. *Straley,* 139 Ohio St. 3d 339, 2014-Ohio-2139, 11 N.E.3d 1175; R.C. 2921.12(A)(1). On the other hand, the crime of gross abuse of a corpse is completed when a person, not authorized by law, treats a human corpse in a way that would outrage community sensibilities. R.C. 2927.01(B).

{¶ 38} Revere maintains that the charges should have merged because "tampering with evidence as to a corpse and the charge of gross abuse of a corpse each corresponds to a similar animus." Appellant's Brief at 23. The effort to drag Burgan's body to a remote section of the property, Revere argues, constituted the same conduct which made him responsible for the tampering charge. Appellant's Brief at 24. While the motivation for completing the two crimes *may* have been the same (the record provides no indication of Revere's motivation), the resulting harm was not.

{¶ 39} In *State v. Rivera*, 2d Dist. Clark No. 2018-CA-117, 2019-Ohio-3296, a factually similar case in which the defendant was convicted of both tampering with evidence and gross abuse of a corpse after he dumped the body of a deceased woman in a wooded lot, we concluded that the victims of the crime were the same (the citizens of the State of Ohio), but that each offense resulted in separate, distinct harm. We noted that the "harm resulting from the tampering with evidence offense was the unavailability of the corpse as evidence. In contrast, the harm resulting from the abuse of a corpse offense was the outrage to reasonable community sensibilities." *Id.* at ¶ 9. Because the

offenses resulted in separate and identifiable harm, we held that they were offenses of dissimilar import and not subject to merger. *Id.*

**{¶ 40}** The same principle applies here. Dumping Burgan's body in the woods and covering it with a tarp prevented law enforcement from finding and using it as evidence. The blatant disregard for the dignity of Burgan's body, who Revere admittedly had a relationship with, was an outrage to community sensibilities. The crimes had separate, identifiable harm, were offenses of dissimilar import, and were not subject to merger. The second assignment of error is overruled.

### IV.    Conclusion

**{¶ 41}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Carlo C. McGinnis
Hon. Mary L. Wiseman