[Cite as *State v. Bolen*, 2025-Ohio-5104.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

DUSTIN RAY BOLEN,

    DEFENDANT-APPELLANT.

CASE NO. 6-25-12

OPINION AND
JUDGMENT ENTRY

Appeal from Hardin County Common Pleas Court
Trial Court No. CRI 20242166

**Judgment Affirmed**

Date of Decision:  November 10, 2025

APPEARANCES:

   *Michael B. Kelley* for Appellant

   *Morgan S. Fish* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Dustin Ray Bolen ("Bolen") appeals the judgment and sentence of the Hardin County Common Pleas Court, alleging that the trial court erroneously imposed consecutive sentences; failed to merge allied offenses; and accepted guilty pleas that were not knowingly, intelligently, and voluntarily entered. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On March 28, 2024, Bolen was with his father, Michael Bolen ("Michael"), at his (Michael's) house. At some point, they got into an altercation. As a result, Michael left the house, went to his mother's residence, and stayed there the entire evening. The next day, Michael returned to his house because he had an appointment with the plumber.

{¶3} After Michael arrived, he and Bolen got into a fight. Bolen affirmed that he got mad at his father and then used physical force against him. Specifically, Bolen choked his father and killed him. He then disposed of certain clothing items, cleaned the bathroom, and left a misleading note on the kitchen table. Bolen tore up the floor of the closet in one of Michael's bedrooms and dug a hole. He wrapped Michael's body with some blankets and shower curtains before burying him face down in a kneeling position.

{¶4} Michael's family became concerned about where he was and called law enforcement on March 31, 2024. Bolen eventually told law enforcement where his

father's body was buried. When law enforcement located Michael's body, around two-thirds of it was covered with dirt. Law enforcement discovered a place next to a shed outside the house where some earth had been removed and came to believe that this was the source of the dirt covering Michael's remains.

{¶5} On November 7, 2024, Bolen was charged with (1) one count of murder in violation of R.C. 2903.02(A), an unclassified felony; (2) one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; (3) one count of gross abuse of a corpse in violation of R.C. 2927.01(B), a fifth-degree felony; (4) one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony; (5) one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(1), a fourth-degree felony; (6) one count of theft from a person in a protected class in violation R.C. 2913.02(A)(1), fifth-degree felony; and (7) one count of possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony.

{¶6} On March 5, 2025, Bolen pled guilty to three charges: (1) one count of murder in violation of R.C. 2903.02(A), an unclassified felony; (2) one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; and (3) one count of gross abuse of a corpse in violation of R.C. 2927.01(B), a fifth-degree felony. The remaining charges were dismissed by the trial court.

{¶7} On April 2, 2025, Bolen was sentenced to prison terms of fifteen years to life for murder; thirty-six months for tampering with evidence; and twelve months

for gross abuse of a corpse. While the parties jointly recommended that the prison terms be served concurrently, the trial court imposed the prison terms consecutively. On April 22, 2025, Bolen filed his notice of appeal, raising three assignments of error:

**First Assignment of Error**

**The trial court's sentence is contrary to law and violates R.C. 2929.14(C)(4) as the Court erroneously imposed consecutive sentences, which is plain error.**

**Second Assignment of Error**

**The trial court erred when it failed to merge counts two (tampering) and three (gross abuse of corpse) for sentencing as the two counts are allied offenses with the same animus.**

**Third Assignment of Error**

**The trial court erred when it accepted the Appellant's guilty pleas as the pleas were not knowingly, intelligently, and voluntarily given.**

*First Assignment of Error*

{¶8} Bolen argues that his sentence is contrary to the law because the trial court imposed consecutive sentences without making the findings required by R.C. 2929.14(C)(4).

Legal Standard

{¶9} R.C. 2929.41(A) sets the general rule that prison terms "shall be served concurrently" unless the trial court makes the requisite findings under R.C. 2929.14(C)(4). This provision reads as follows:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4). Thus, when imposing consecutive sentences, "R.C. 2929.14(C)(4) requires the trial court to make specific findings on the record." *State v. Gallant*, 2025-Ohio-3182, at ¶ 10 (3d Dist.); *State v. Hites*, 2012-Ohio-1892, ¶ 11 (3d Dist.). The trial court must find that:

(1) . . . consecutive sentences are necessary to protect the public or punish the offender ('the necessity finding'); (2) . . . consecutive sentences are not disproportionate to the seriousness of the offense ('the proportionality finding'); and (3) . . . one of the three factors listed in R.C. 2929.14(C)(4)(a-c) is applicable.

*State v. Sims*, 2025-Ohio-2488, ¶ 7 (3d Dist.).

{¶10} Further, "the trial court must state the required findings at the sentencing hearing . . . and incorporate those findings into its sentencing entry." *Gallant* at ¶ 11; *State v. Runyon*, 2024-Ohio-5039, at ¶ 24 (3d Dist.). The trial court "has no obligation to state reasons to support its findings and . . . to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Gallant* at ¶ 11, quoting *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

### Standard of Review

{¶11} "Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence *only* [upon finding], by clear and convincing evidence, that the record does not support the trial court's findings under the relevant statutes or that the sentence is otherwise contrary to law." (Emphasis added.) *State v. Lawrence*, 2025-Ohio-3023, ¶ 17 (3d Dist.); *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

{¶12} The standard of "clear and convincing evidence" is a highly deferential one, it is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Gallant*, 2025-Ohio-3182, at ¶ 8 (3d Dist.), quoting *Marcum* at ¶ 22.

### Legal Analysis

{¶13} On appeal, Bolen asserts that the language used by the trial court at sentencing was not adequate to make the necessity finding, the proportionality finding, and one of the required R.C. 2929.14(C)(4)(a)-(c) factors. The State

responds that the trial court made findings that satisfy the three prongs. It expressly made the necessity finding, stating that consecutive sentences were necessary to protect the public and punish the offender. The trial judge then described this offense as "heinous." (Tr. 17). He also said, "I still can't imagine sitting there and looking into my father's eyes and choking the life out of him and continuing to do that." (Tr. 18). In context, the trial court was addressing the proportionality of the punishment in relation to the seriousness of the offense. The trial judge also stated that the harm caused was so great or unusual that a single term would be insufficient, which satisfies R.C. 2929.14(C)(4)(b).

{¶14} The Supreme Court of Ohio has held that the trial court is not required to use exact statutory language so long as the substance of the findings are made clear and separate on the record. *Bonnell*, 2014-Ohio-3177, at ¶ 29; *Gallant*, 2025-Ohio-3182, at ¶ 11 (3d Dist.). Here, the trial court's statements, while not formulaic, were functionally equivalent to the required statutory findings. The record indicates that the trial court made the required R.C. 2929.14(C)(4) findings at sentencing even if not in the exact statutory language. Thus, Bolen has failed to demonstrate that the imposition of consecutive sentences is contrary to law. We overrule his first assignment of error.

*Second Assignment of Error*

{¶15} Bolen argues that his conviction for tampering with evidence and gross abuse of a corpse are allied offenses that should have merged at sentencing.

Legal Standard

**{¶16}** Because R.C. 2941.25 focuses on the defendant's conduct, the allied-offense analysis is dependent upon the facts of a case. *State v. Ruff*, 2015-Ohio-995, at ¶ 26; *Lawrence*, 2025-Ohio-3023, at ¶ 19 (3d Dist.). "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Lawrence* at ¶ 19, quoting *Ruff* at ¶ 23. R.C. 2941.25, Ohio's multiple-count statute, provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶17}** The Supreme Court of Ohio has directed the use of a three-part test to determine whether a defendant can be convicted of multiple offenses:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

Case No. 6-25-12

*Ruff* at ¶ 31.

## Standard of Review

{**¶18**} "We review de novo whether offenses are allied offenses of similar import." *Lawrence*, 2025-Ohio-3023, at ¶ 17 (3d Dist.); *State v. Tall*, 2023-Ohio-1853, ¶ 7 (3d Dist.). "De novo review is independent, without deference to the lower court's decision." *Lawrence*, 2025-Ohio-3023, at ¶ 17 (3d Dist.); *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

## Legal Analysis

{**¶19**} Bolen contends that tampering with evidence and gross abuse of corpse are allied offenses because they were committed with the same conduct. Under R.C. 2921.12(A)(1), a tampering with evidence conviction requires that:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

Under R.C. 2927.01(B), a gross abuse of a corpse conviction requires that "no person, except as authorized by law, shall treat a human corpse in a way that would outrage reasonable community sensibilities." Bolen argues that the burial of his father in a hole beneath the closet floor of a residence was a singular act that both destroyed evidence, fulfilling the requirements of the tampering charge, and dishonored the body, fulfilling the requirements of the abuse of a corpse charge.

-9-

Therefore, he maintains the offenses were committed simultaneously and should merge.

{¶20} However, the State argues in its brief that it is possible to commit both offenses with the same conduct but such did not occur here under the facts presented. Rather, the two charges stemmed from separate and distinguishable actions by Bolen. The tampering with evidence charge was supported by Bolen's acts of cleaning the bathroom where the killing occurred; disposing of incriminating clothing; and creating false evidence by writing a misleading note. These actions were directed at concealing the fact of the murder and misleading law enforcement.

{¶21} In contrast, the gross abuse of a corpse charge arose from a separate set of acts that included tearing up the floor of the closet in a bedroom, digging a hole in which to place the body; wrapping the corpse in blankets and shower curtains; positioning the body face down in a kneeling posture; and partially burying it.

{¶22} The record clearly establishes that the tampering offense and the gross abuse of a corpse offense were committed at different times and with distinct sets of actions. Since these offenses were committed with separate conduct, they are not subject to merger. We thus find this first argument without merit.

{¶23} While our analysis of Bolen's first argument is dispositive of this issue, Bolen also argues that the tampering with evidence and gross abuse of a corpse charges involved the same harm: interfering with the ability of law

enforcement to recover and examine the victim's body. He contends that the charges must merge because the acts affected the same victim and resulted in a single form of harm.

{¶24} The State asserts that the harm from tampering with evidence is to the justice system. It obstructs truth-finding, delays or frustrates investigations, and renders key evidence unavailable. Moreover, the harm from gross abuse of a corpse is a violation of societal norms, human dignity, and the emotional sensibilities of the community and family of the deceased.

{¶25} The State also argues that, even if a common victim is involved, offenses may be of dissimilar import if they cause separate identifiable harms. In *State v. Revere*, 2022-Ohio-551, ¶ 39-40 (2nd Dist.), the Second District considered a case in which the defendant hid the victim's body in the woods and covered it with a tarp. The court found that these acts

> prevented law enforcement from finding [the body] and using it as evidence. The blatant disregard for the dignity of the . . . [victim's] body, who Revere admittedly had a relationship with, was an outrage to community sensibilities. [Therefore, t]he crimes had separate, identifiable harm, were offenses of dissimilar import, and were not subject to merger.

*Id*.

{¶26} Following the logic in *Revere*, we conclude that the State correctly notes that these two charges address distinct societal interests. Like in *Revere*, the State here argues that dual harms support dual punishments. *Revere* at ¶ 39. The

harms caused by the two offenses are distinct and separately punishable. *See Ruff*, 2015-Ohio-995, at ¶ 26 (the Ohio Supreme Court held that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) if the harm that results from each offense is separate and identifiable."). Therefore, the offenses are of dissimilar import and are not subject to merger. This second argument is without merit.

{¶27} In summary, Bolen failed to establish that these two convictions are allied offenses of similar import. The trial court properly concluded that his convictions for tampering with evidence and gross abuse of a corpse did not merge at sentencing. We thus overrule his second assignment of error.

*Third Assignment of Error*

{¶28} Bolen argues that his guilty plea was not entered knowingly, voluntarily, and intelligently.

Legal Standard

{¶29} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Carpenter*, 2025-Ohio-2561, ¶ 8 (3d Dist.), quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). The enforcement of the plea is unconstitutional if a guilty plea was not a knowing, intelligent, and voluntary one. *State v. Dangler*, 2020-Ohio-2765, ¶ 10; *Carpenter* at ¶ 8. "A guilty plea that is coerced or induced by promises or threats renders the

plea involuntary." *Carpenter* at ¶ 8; *State v. Lawson*, 2018-Ohio-4922, ¶ 20 (3d Dist.).

**{¶30}** "[C]rim.R. 11 sets forth the procedures to be followed by a trial court when accepting a guilty plea and 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Carpenter* at ¶ 9, quoting *Dangler* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). An appellate court considers the dialogue between the trial court and the defendant and whether it shows that the defendant understood the consequences of the plea. *Carpenter* at ¶ 9; *Dangler* at ¶ 12.

**{¶31}** Crim.R. 11(C) applies specifically to a trial court's acceptance of guilty pleas in felony cases and provides in relevant part as follows:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally * * * and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶32}** "[A] defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R.11(C)." *State v. Sessom*, 2024-Ohio-130, ¶ 25 (3d Dist.), quoting *Dangler*, 2020-Ohio-2765, at ¶ 16. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Sessom* at ¶ 25. *Dangler*, however, set the exceptions to this rule:

> First, 'a trial court's complete failure to comply with a portion of Crim.R. 11(C) eliminates the defendant's burden to show prejudice.' Second, '[w]hen a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest' as required by Crim.R. 11(C)(2)(c), the defendant's plea is presumed to have been 'entered involuntarily and unknowingly, and no showing of prejudice is required.'

*State v. Caudill*, 2023-Ohio-3843, ¶ 25 (3d Dist.), quoting *Dangler*, 2020-Ohio-2765, at ¶ 14-15.

> The Ohio Supreme Court has explained the analysis of an appellate challenge based upon Crim.R. 11(C)(2) as involving three main questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?"

*Sessom* at ¶ 25, quoting *Dangler*, 2020-Ohio-2765, at ¶ 17.

{¶33} "'[A] trial court must advis[e] a defendant of all five constitutional rights listed' in Crim.R. 11(C)(2)(c) during a plea colloquy." *Sessom* at ¶ 26, quoting *State v. Veney*, 2008-Ohio-5200, ¶ 22. The five constitutional rights include:

> (1) the Fifth Amendment privilege against self-incrimination, (2) the right to a trial by jury, (3) the right to confront one's accusers, (4) the right to the compulsory process of witnesses, and (5) the right to be proven guilty beyond a reasonable doubt.

*State v. Howard*, 2017-Ohio-8020, ¶ 20 (3d Dist.).

{¶34} "[T]he language of Crim.R.11(C)(2)(c) 'supports the conclusion that the list of cited rights was intended to be exclusive' and does not 'indicat[e] that the trial court is obligated to inform the defendant of other constitutional rights.'" *Sessom*, 2024-Ohio-130, at ¶ 26 (3d Dist.), quoting *State v. Phillips*, 2020-Ohio-2785, ¶ 12 (3d Dist.), quoting *State v. Stewart*, 2011-Ohio-2582, ¶ 20 (11th Dist.).

Legal Analysis

{¶35} Bolen raises two main sets of arguments. He first argues that the trial court failed to substantially comply with Crim. R. 11(C) by not explaining in detail the constitutional rights he was waiving by entering a guilty plea. Specifically, he argues that the trial court's mention of a bench trial while explaining his right to a jury trial created confusion, leading him to believe that he could still go to trial after pleading guilty. However, the record reflects that the trial court clearly explained

that the right to a bench trial and the right to a jury trial were distinct and that he would waive both by entering a guilty plea.

**{¶36}** Bolen further contends that the trial court initially failed to inform him that the State could not comment on his choice to exercise his constitutional right to remain silent at trial. But the record reflects that the trial court eventually informed him of this right at the hearing even if not initially. Having examined the record, we conclude that the first set of arguments does not identify a deficiency in the trial court's explanation of the constitutional rights that Bolen was waiving.

**{¶37}** In his second set of arguments, Bolen asserts that the trial court did not make the charges or potential penalties clear. He argues that the original plea form inaccurately listed murder as a third-degree felony, creating confusion. Yet, the State correctly points out that the trial court promptly identified and corrected this typographical error. In response, Bolen affirmatively stated he understood the corrections.

**{¶38}** Bolen also argues that the written joint sentencing recommendation created confusion because it stated that the prison terms should run concurrently. However, the trial court clearly stated that it was not bound by the joint sentencing recommendation and that it could still impose the prison terms consecutively if Bolen pled guilty.

**{¶39}** Lastly, Bolen insists that the trial court's comment that sentencing "will not happen" was misleading or confusing. (Tr. 15). However, in context, the

trial court was clearly explaining that a sentence would not be imposed immediately after Bolen's guilty plea was entered but that a sentence would be imposed at a separate hearing after the pre-sentence investigation was written. Thus, we find this last set of arguments fails to establish that the charges or potential penalties were not fully explained and are without merit.

{¶40} After reviewing the record, we conclude that Bolen failed to identify a deficiency in the Crim.R. 11 colloquy. Thus, he has failed to demonstrate that his pleas were not knowingly, intelligently, and voluntarily entered. We thus overrule his third assignment of error.

*Conclusion*

{¶41} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Hardin County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**WALDICK, P.J. and ZIMMERMAN, J., concur.**

Case No. 6-25-12

# <u>JUDGMENT ENTRY</u>

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

        John R. Willamowski, Judge

        Juergen A. Waldick, Judge

        William R. Zimmerman, Judge

DATED:
/hls